[No. 32873-5-I.   Division One.   January 17, 1995.]

DANA'S HOUSEKEEPING, INC., *Appellant*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent*.

*Michael L. Hall* and *Perkins Coie*, for appellant.

*Christine O. Gregoire, Attorney General*, and *James Steele Kallmer, Assistant*, for respondent.

WEBSTER, J. — Dana's Housekeeping, Inc., a business which contracts with housecleaners to clean private homes, appeals two industrial insurance tax assessments. We affirm the trial court, although we interpret the domestic servant exclusion differently.

## FACTS

Dana's Housekeeping, Inc., advertises itself to the public as Seattle's largest "personalized homemaking service". Dana's contracts with 140 housecleaners, all of whom sign an agreement characterizing the housecleaner as an "independent contractor". Dana's assigns housecleaners to specific jobs, and makes all arrangements for the housecleaning (housecleaners provide their own transportation). While jobs may be declined, Dana's warns the "relationship will likely be terminated" if jobs are refused or availability is continually changing. Jobs may not be subcontracted or swapped without Dana's' permission.

Dana's considers the homeowners to be Dana's' clients; housecleaners agree not to solicit Dana's' customers for 90 days after termination. Homeowners must pay for housecleaning in advance, usually by leaving a check payable to Dana's. Housecleaners are instructed to not clean unless a check is waiting. The amount owed is determined by Dana's in advance, although a housecleaner can charge more and often receives a gratuity. Dana's pays housecleaners by taking checks made payable to Dana's and endorsing them over to the housecleaners. If a check bounces, Dana pays the housecleaner and pursues the homeowner. Dana's does all of the paperwork and accounting.

Housecleaners typically clean many different homes each week. Homeowners prepare priority lists for the housecleaner. A housecleaner who finishes the priority list before the agreed time has expired (usually 4 hours) is required to call Dana's for instructions on work in the same home to use up the remaining time. The homeowner is responsible for making all necessary cleaning supplies available. Housecleaners are prohibited from shampooing carpets, washing outside windows, stripping large floors, or waxing hardwood floors. Dana's prohibits housecleaners from giving their phone number to homeowners, receiving phone calls at a client's home, taking anyone along on a cleaning job, and smoking (unless it is done outside and is "okay with the client"). Dana's instructs housecleaners on cleaning methods and important detailing to insure the "Dana's Sparkle". Homeowners are encouraged to complain to Dana's, who also calls clients periodically to monitor quality.

## PROCEEDINGS BELOW

Dana's appeals a July 1987 through September 1988 $65,030.71 industrial insurance premium assessment and an October 1988 through June 1989 $59,099.25 assessment. The Board of Industrial Appeals Decision and Order (hereinafter Decision and Order) held (1) the housecleaners were Dana's' workers pursuant to RCW 51.08.180(1) and (2) because the domestic servant exclusion contained in RCW 51-

.12.020(1) does not apply to commercial entities, the house-cleaners were not exempt domestic servants, (3) the Department was not collaterally estopped from arguing that the housecleaners were Dana's' "workers", even though the Department had denied an injury claim filed by a Dana's' housecleaner, and (4) the proper risk classification for the housecleaners was the domestic servant classification. The trial court agreed the housecleaners were "workers", but held commercial entities could be exempt from coverage under RCW 51.12.020(1), unless two or more domestic servants collectively worked more than 40 hours. Because Dana's 140 housecleaners collectively worked more than 40 hours, the court held the domestic servant exclusion did not apply to Dana's. The trial court affirmed the Decision and Order's collateral estoppel and risk classification decisions.

## STANDARD OF REVIEW

The standard of review for agency proceedings which began prior to July 1, 1989, is outlined in former RCW 34.04.130, while "agency proceedings begun on or after that date" are governed by RCW 34.05.570. RCW 34.05.902. Notice and Order of Assessment (NOA) 68944, issued March 23, 1989, assessed Dana's for industrial insurance premiums allegedly owed for July 1987 through September 1988. Dana's filed a notice of appeal on April 3, 1989, making former RCW 34.04.130 applicable:

> The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
>     . . . .
>
> (d) affected by other error of law; or
>
> (e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order;

Former RCW 34.04.130(6). NOA 74094, issued August 8, 1989 (and appealed August 16, 1989), which assessed Dana's for industrial premiums allegedly owed for October 1988

through June 1989, is reviewable under the current Administrative Procedure Act (APA):

> The court shall grant relief from an agency order in an adjudicative proceeding only if it determines that:
>
> . . . .
>
> (d) The agency has erroneously interpreted or applied the law; [or] (e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter[.]

RCW 34.05.570(3).

Appellate review of factual findings under the former and current APA requires weighing the findings against *all* evidence presented. Former RCW 34.04.130(6)(e); RCW 34.05.570(3)(e); William R. Andersen, *The 1988 Washington Administrative Procedure Act — An Introduction*, 64 Wash. L. Rev. 781, 839-40 (1989). A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court is left with the definite and firm conviction that a mistake has been committed based on the entire record; substantial evidence, similarly, is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premises. *Peter M. Black Real Estate Co. v. Department of Labor & Indus.*, 70 Wn. App. 482, 487, 854 P.2d 46 (1993); *Olmstead v. Department of Health, Med. Section*, 61 Wn. App. 888, 893, 812 P.2d 527 (1991). Under both the "error of law" and the "erroneously interpreted or applied the law" standards, an agency's interpretation of the statute with whose administration it is charged is entitled to substantial weight. *Evans v. Employment Sec. Dep't*, 72 Wn. App. 862, 865, 866 P.2d 687 (1994); *Cascade Nursing Servs., Ltd. v. Employment Sec. Dep't*, 71 Wn. App. 23, 29, 856 P.2d 421 (1993), *review denied*, 123 Wn.2d 1013 (1994). A court may, however, substitute its own judgment on the statute which the agency primarily applies and interprets. *Cascade Nursing Servs.*, at 29. An agency's legal interpretation in areas outside of its expertise is entitled to no deference. *Russell v. Department of Human Rights*, 70 Wn. App. 408,

412, 854 P.2d 1087 (1993), *review denied*, 123 Wn.2d 1011 (1994).

Although the parties dispute whether current or former APA standards govern review, neither party argues that the result depends on which APA version is applied. We find that the result in this case would be the same under either standard. Because there is no conflict between the factual and legal review under former and current APA standards, it is proper to apply one standard. *Cf. Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 101, 864 P.2d 937 (1994) (false conflict of laws makes application of local law proper). Therefore, although the commencement of NOA 68944 technically requires application of former RCW 34.04.130(6)(d)-(e), we accept Appellant's invitation to review the appeal entirely under the current APA, RCW 34.05.570(3)(d)-(e).

## DISCUSSION

### Housecleaners as "Workers" Pursuant to RCW 51.08.180(1)

■ Dana's first contends the housecleaners are not Dana's' "workers" for purposes of RCW 51.08.180(1), despite the Industrial Insurance Act's sweeping purpose: "There is a hazard in all employment and it is the purpose of this title to embrace all employments which are within the legislative jurisdiction of the state." RCW 51.12.010. This broad policy is effected by defining "worker" to include both employees and independent contractors (the latter with one exception):

> "Worker" means every person in this state who is engaged in the employment of an employer under this title, whether by way of manual labor or otherwise in the course of his or her employment; also every person in this state who is engaged in the employment of or who is working under an independent contract, the essence of which is his or her personal labor for an employer under this title, whether by way of manual labor or otherwise, in the course of his or her employment, or as a separate alternative, a person is not a worker if he or she meets the tests set forth in subsections (1) through (6) of RCW 51.08.195 . . ..

RCW 51.08.180(1).[1] The current broad definition of "worker" includes independent contractors whose personal efforts constitute the main element in accomplishing the objects of the employment. *Norman v. Department of Labor & Indus.*, 10 Wn.2d 180, 184, 116 P.2d 360 (1941); *Peter M. Black Real Estate Co.*, 70 Wn. App. at 488. This case addresses whether the housecleaners are (1) working under an independent contract, (2) the essence of which is personal labor, (3) for Dana's. RCW 51.08.180(1).[2] Dana's does not dispute that the housecleaners work under an independent contract; therefore, we examine only the essence of the work and for whom the work is performed.

■■ Dana's claims the essence of its relationship with the housecleaners is "an agreement to accept referrals and share a fee". But the "essence" with which the statute is concerned is the essence of the *work* under the independent contract, not the characterization of the parties' relationship.[3] Thus, in *White v. Department of Labor & Indus.*, 48 Wn.2d 470, 294 P.2d 650 (1956), the court held personal labor not to be the essence of the work if the independent contractor (1) must of necessity own or supply machinery or equipment (as distinguished from usual hand tools) to perform the contract; (2) obviously could not perform the contract without assistance; or (3) of necessity or choice employs others to do all or part of

---

[1]The act's definition of employer mirrors the definition of worker:

" 'Employer' means any person, body of persons, corporate or otherwise, and the legal representatives of a deceased employer, all while engaged in this state in any work covered by the provisions of this title, by way of trade or business, or who contracts with one or more workers, the essence of which is the personal labor of such worker or workers. Or as a separate alternative, persons or entities are not employers when they contract or agree to remunerate the services performed by an individual who meets the tests set forth in subsections (1) through (6) of RCW 51.08.195." RCW 51.08.070.

[2]Because we hold the housecleaners are working under an independent contract, the essence of which is personal labor for Dana's, we do not address whether the housecleaners are Dana's employees.

[3]The parties' relationship is addressed when determining whether the relationship is employer/employee or a person is "working under an independent contract", and also implicated in the "for an employer" element.

the work he has contracted to perform. *White*, at 474. Whether the essence of the work is personal labor is a factual determination, focusing on the realities of the situation, rather than technical requirements. *Jamison v. Department of Labor & Indus.*, 65 Wn. App. 125, 132, 827 P.2d 1085 (1992). The factfinder can consider the contract, the work to be done, the situation of the parties, and other attendant circumstances. *Lloyd's of Yakima Floor Ctr. v. Department of Labor & Indus.*, 33 Wn. App. 745, 749, 662 P.2d 391 (1982).

The Decision and Order determined the housecleaners supply no equipment, perform housecleaning duties without assistance, and are forbidden to employ others. The housecleaning duties were manual, including dusting, vacuuming, washing dishes, making beds, mopping floors, and washing interior windows. The contract between Dana's and the housecleaners, although stating the essence of the contract to be the "solicitation" of "housekeeping assignments from Dana's", is unpersuasive in light of the situational realities. *Jamison*, 65 Wn. App. at 132; *see also* RCW 51.04.060 (employer may not exempt himself or herself from industrial insurance by way of contract). Substantial evidence supports the Board's finding of personal labor as the essence of the work under the contract.

■ Dana's claims the housecleaner's personal labor was not *for* Dana's because the homeowner is the recipient of the house cleaning. Dana's claims the relationship involving personal labor is between the housecleaners as sole proprietors and the homeowners. Personal labor "for the employer", however, includes both direct labor for Dana's and labor for Dana's' benefit. *Cascade Nursing Servs.*, 71 Wn. App. at 33. If the realities demonstrate the labor is for Dana's' benefit, the existence of a third party customer does not place the worker outside the scope of industrial insurance coverage. *Lloyd's*, 33 Wn. App. at 752 (*Lloyd's* addressed the same argument as we do here, and reached the same conclusion on substantially similar facts).

The realities attendant this case include continuing benefit, control, and acceptance of risk of loss. Dana's received a

continuing benefit from its contract with the housecleaners — up to 48 percent of the cleaning fee paid by homeowners. Dana's intensely controlled scope, manner, quality, and by whom the work was performed. Dana's accepted the risk of nonpayment. There is evidence in sufficient quantum to persuade us that personal labor was performed for Dana's; the existence of homeowners as end recipients of the cleaning service does not change the reality that the housecleaners' labor was for Dana's benefit.

### Domestic Servant Exclusion

Dana's claims that the housecleaners are excluded from mandatory coverage under the domestic servant employment exclusion.[4] We quote the first several exclusions for context:

> The following are the only employments which shall not be included within the mandatory coverage of this title:
>
> (1) Any person employed as a domestic servant in a private home by an employer who has less than two employees regularly employed forty or more hours a week in such employment.
>
> (2) Any person employed to do gardening, maintenance, repair, remodeling, or similar work in or about the private home of the employer.
>
> (3) A person whose employment is not in the course of the trade, business, or profession of his or her employer and is not in or about the private home of the employer.

RCW 51.12.020(1)-(3). The exclusion must be construed to minimize suffering and economic loss arising from injuries and/or death occurring in the course of employment. RCW 51.12.010.

Twenty-six of the fifty states exclude domestic servants from industrial insurance coverage. 1C Arthur Larson, *Workmen's Compensation* § 50.30 (1991). Domestic workers have been traditionally excluded from coverage because (1) homeowners cannot pass through the insurance cost to an

---

[4]Domestic servants are persons hired or employed primarily for the performance of household duties and chores, the maintenance of the home, and the care, comfort and convenience of members of the household. *Everist v. Department of Labor & Indus.*, 57 Wn. App. 483, 486 n.5, 789 P.2d 760, *review denied*, 114 Wn.2d 1027 (1990). The housecleaners are domestic servants.

ultimate consumer, as can a business, and (2) homeowners typically employ many different types of workers, making financial and administrative burdens on homeowners unreasonable if persons hired to help around the home were covered. *Everist*, 57 Wn. App. at 486.

Dana's claims the domestic servant exemption applies to both homeowners and businesses, urging that this interpretation follows from a plain reading of the statute. This interpretation would make for curious results: Dana's, which has 140 housecleaners each working less than 40 hours a week, would not be required to participate in industrial insurance, but a homeowner with two full-time domestic servants would be a mandatory participant.[5] We believe that the exclusion can be plainly read, and that a plain reading demonstrates the noncommercial nature of the exclusion: the key words in the exclusion are "a private home". RCW 51.12.020(1). The domestic servant exclusion does not apply to a commercial entity contracting with numerous housecleaners to clean many, different homes because the exclusion is limited to *a* private home.

This interpretation is supported by comparing RCW 51.12.020(1), (2), and (3). The difference in language between subsections (1), (2), and (3), "in a private home by an employer" and "in or about the private home of the employer" is not significant — both express the idea that the work performed is at *a* private home. The difference in language can be attributed to the "forty or more hours" and more than one employee portions of the domestic servant exclusion which would have made the phrasing used in subsections (2) and (3) cumbersome. Taken together, these three exclusions express the idea that a person can hire a certain amount of nonbusiness help without triggering mandatory industrial insurance coverage. The common thread in all three exclusions is that performance of the work does not contribute to the employer's business, and is thus noncommercial. *Cf.*

---

[5]Dana's' control over scheduling would allow perpetual avoidance of industrial insurance responsibility.

*Griebel v. Industrial Comm'n*, 133 Ariz. 270, 273, 650 P.2d 1252, 1255 (Ct. App. 1982) (because the purpose of workers' compensation is to place the burden of injury from industrial causes on industry, "domestic servant" must be defined with reference to whether the master attempts to profit in an entrepreneurial capacity from the servant's labor); *see also* 1C Larson §§ 50.00, 50.30 (categorizing such statutes as "nonbusiness employments" because "not in the employer's trade or business").[6]

Interpreting the domestic servant exclusion to apply only to noncommercial entities fits with the general purpose of Washington's Industrial Insurance Act — to "embrace all employments which are within the legislative jurisdiction of the state." RCW 51.12.010. It preserves the policy underlying domestic servant exclusions — homeowners cannot pass the insurance cost through to consumers while commercial entities can. This interpretation is also consistent with the court's obligation to give some deference to an interpretation by the agency charged with administration of industrial insurance. *Cascade Nursing Servs.*, 71 Wn. App. at 29. We do not adopt the trial court's reasoning, which found that commercial entities providing cleaning services to many, different households might find refuge in the domestic servant exclusion. Instead, we agree with the effect of the trial court's ruling, namely, that Dana's cannot rely on the domestic servant exclusion to avoid industrial insurance taxes. The industrial appeals judge appropriately commented that "[a] firm so obviously engaged in a commercial enterprise cannot avoid the Workers' Compensation Act simply because it takes care to employ 50 people for 39 hours a week." RCW 51.12.020(1) does not exclude domestic servants working for a commercial enterprise in many, different private homes.

---

[6]Both parties discuss the applicability of *In re Kerns*, 107 Or. App. 721, 813 P.2d 578, *review denied*, 312 Or. 525 (1991). We read Washington's exclusion differently, as requiring characterization of the employer, in relation to the work and its location. *Kerns* focuses on the task, in relation to the home. *Kerns*, at 723.

Collateral Estoppel

Dana's claims the Department and Dana's previously litigated the issue of whether the housekeepers are "workers", and relitigation is precluded. The record of the earlier "litigation", which involved a claim for benefits by Ms. Nystrom, a housekeeper, consists of: (1) Nystrom's handwritten, single page, benefits claim seeking reimbursement for medical expenses (the physician who treated Nystrom stated that she would not miss any work); (2) Dana's response to the claim, arguing that Nystrom was self-employed or the homeowner's employee; and (3) a supervisor of industrial insurance's order and notice (computer generated), the substance of which we quote in full:

> THIS CLAIM FOR BENEFITS IS HEREBY REJECTED FOR THE FOLLOWING REASON(S):
>
> > THE CLAIMANT WAS A SOLE PROPRIETOR OR PARTNER AT THE TIME OF INJURY AND HAD NOT ELECTED TO BE INSURED UNDER THE PROVISIONS OF THE INDUSTRIAL INSURANCE LAWS.
>
> ANY AND ALL BILLS FOR SERVICES OR TREATMENT CONCERNING THIS CLAIM ARE REJECTED, EXCEPT THOSE AUTHORIZED BY THE DEPARTMENT FOR DIAGNOSIS.

(The sole proprietor exclusion is contained in RCW 51.12.020(5)).

■ Issue preclusion is a judicially created doctrine which promotes fairness by preventing relitigation of particular issues. *Shimman v. Frank*, 625 F.2d 80, 89 (6th Cir. 1980). While administrative agency adjudications may be accorded preclusive effect in subsequent litigation, issues will not be precluded when the benefits of finality are outweighed by adverse impact on public interest. *Shoemaker v. Bremerton*, 109 Wn.2d 504, 508, 745 P.2d 858 (1987); Restatement (Second) of Judgments § 28(5)(a) (1980). Issue preclusion will not be mechanically or rigidly applied, and must be qualified or rejected when its application would contravene an overriding public policy. *Tipler v. E.I. duPont deNemours & Co.*, 443 F.2d 125, 128 (6th Cir. 1971).

Precluding relitigation of the worker status of all other housekeepers would contravene an overriding legislative

purpose — liberal application of industrial insurance law to minimize suffering and economic loss arising from injury and death occurring in the course of employment. RCW 51.12.010; *International Harvester Co. v. Occupational Safety & Health Rev. Comm'n*, 628 F.2d 982, 986 (7th Cir. 1980) (refusing to preclude a claim when important OSHA policies would be undercut). Applying preclusion would require the Department to appeal each and every benefits denial or risk inability to assess employers for taxes relating to other similarly situated workers; this burden would egregiously waste resources. The difference in quality and extensiveness of Nystrom's benefits claim and this action supports a determination that relitigation of the housekeepers' status should not be precluded (although qualitative concerns are technically a distinct reason for refusing issue preclusion).[7] Restatement (Second) of Judgments § 28(3). While the Department is obliged to investigate and justly determine each benefits claim, public policy prohibits Dana's from circumventing industrial insurance obligations on grounds that the Department refused medical benefits to one of its workers. Relitigation of whether the housekeepers are "workers" is not precluded.

## Risk Classification

Dana's claims its risk classification should be as an employment agency, rather than characterizing the housecleaners as domestic servants under chore services. The Department of Labor and Industries is responsible for classifying occupations according to risk when determining insurance premiums owed. RCW 51.16.035. The Department's rules require determination of the rate which "best describes the business of the employer". WAC 296-17-310(7). Classification 6508 covers

Chore services

Domestic servants employed in or outside private residences of homeowners.

---

[7]An unappealed portion of the Decision and Order prohibits the Department from collecting a premium for Nystrom's hours.

WAC 296-17-721. It has already been determined that the housecleaners are domestic servants for purposes of industrial insurance. It is undisputed that the housecleaners clean private residences. Whether directly or by analogy, classification 6508 correctly describes the housecleaners' environment and work. The characterization of housecleaners as domestic servants for risk classification purposes does not misinterpret the regulation and is supported by substantial evidence. Dana's is not an employment agency, but rather a business which cleans houses.

We affirm.

COLEMAN and BECKER, JJ., concur.

Reconsideration denied March 15, 1995.

Review denied 127 Wn.2d 1007 (1995).