[No. 17124-4-II.    Division Two.    August 29, 1995.]

RICHARD RENINGER, ET AL., *Respondents*, v. THE DEPARTMENT OF CORRECTIONS, ET AL., *Appellants*.

*Christine O. Gregoire, Attorney General,* and *Michael P. Lynch, Assistant,* for appellants.
*Stephen G. Smith,* for respondents.

SEINFELD, C.J. — The Department of Corrections (DOC) disciplined former corrections officers Richard Reninger and William Cohen by demoting them for four and one-half months and reassigning them during that period to guard duty in a unit for problem inmates at McNeil Island Corrections Center. Rather than use administrative processes to appeal the reassignment, Reninger and Cohen resigned and then sued and recovered against DOC and several DOC employees for constructive discharge and intentional interference with a business relationship.[1] We conclude that a civil service employee challenging a work assignment may not sue in tort instead of using those

---

[1]Although the verdict forms do not include DOC among the list of defendants against whom the jury could find liability and award damages, the trial court entered a judgment on the verdict against DOC "by virtue of a Stipulation to Indemnify the individual defendants for acts undertaken by them within the scope of their official duties."

remedies available under the Civil Service Act. Thus, we reverse.

FACTS

In October 1988, then Sergeant Reninger and then Lieutenant Cohen were employed by DOC as correctional officers at McNeil Island Correctional Center. As part of their duties, they conducted a weapons recertification training session for other correctional staff. This involved removing shotguns from the armory and taking them to the firing range. Reninger and Cohen were responsible for ensuring the proper return of the weapons to the armory after their use.

A few days after the training session, Sergeant Robert Shepherd observed what looked like the barrel of a gun protruding from a locker in the range office. He contacted Associate Superintendent Donald Daniel who checked the range office and reported his discovery of three shotguns. His report did not mention Shepherd's involvement.

Captain Allen Scamahorn then conducted an inventory and determined that Reninger and Cohen had last used the three shotguns during their training session. Daniel later acknowledged that his initial report was not accurate, that it was actually Shepherd who had found the weapons. Daniel said he had not disclosed Shepherd's involvement because of his concern about a troubled past family relationship between Shepherd and Cohen.

Following the investigation and subsequent administrative review hearings, Superintendent William Callahan concluded that Cohen and Reninger had failed to account for the weapons. Callahan officially notified the two officers of his decision in letters dated January 23, 1989. The letters state that Reninger and Cohen neglected their duties, were inefficient and "were guilty of gross misconduct in failing to properly account for weapons you used

---

We assume that the jury understood that the constructive discharge claim applied to DOC because of the language used in the jury instructions. *See* jury instructions 2, 8, 10, 14, and 14(a).

to train staff." It continues: "Had these weapons been found by an inmate, the lives of staff, community members and/or other inmates, and control of the institution, could have been severely jeopardized." Callahan sanctioned the officers by demoting them for a four and one-half month period; Scamahorn then reassigned them to a segregation unit that housed "problem inmates."

Upon receipt of Callahan's letter, Reninger and Cohen took sick leave until March 1989; both then resigned, claiming that the reassignment jeopardized their personal safety. They did not express their concerns about their safety to their supervisors before resigning. Nor did they seek review of their reassignments through the civil service appeals process or complain to the Department of Labor & Industries under the Washington Industrial Safety and Health Act (WISHA).

The two officers did use the administrative process to appeal the misconduct finding and the demotion. They claimed that they had returned the guns to the armory and they suggested that Shepherd, Daniel, and possibly others had colluded against them, motivated by personal conflicts.

During the review process, both officers were represented by counsel who had the opportunity to conduct formal depositions, discover DOC documents, and submit hearing memoranda. At the hearing, their counsel made opening and closing statements, called and cross-examined witnesses, and made objections. Following the hearing, the hearings examiner upheld the misconduct finding and the demotion.

The two officers then took the matter before the Personnel Appeals Board (PAB), which affirmed the examiner's decision. Its March 1990 findings and conclusions state:

> [Reninger's and Cohen's] conduct constitutes gross misconduct. For an act to constitute gross misconduct, the act must be glaring and flagrant and must detrimentally affect the agency's ability to carry out its function. [Reninger and Cohen] failed to account properly for the weapons, a glaring

omission which detrimentally affected the agency's ability to carry out its functions of protecting inmates, staff, and the community.

Conclusions V and VI for Cohen and Reninger respectively.

The PAB also found that under all the circumstances the four and one-half month demotion was an appropriate disciplinary action. Thus, it affirmed the demotion and denied the appeal. Reninger and Cohen then appealed to superior court, but the superior court later dismissed their appeals because they had been filed in the wrong county.

In June 1990, Reninger and Cohen filed a complaint for damages in superior court, alleging multiple theories of relief including constructive discharge, interference with a contractual relationship, and outrage. The named defendants included DOC, Callahan, Daniel, Scamahorn, and Shepherd.

Defendants moved for summary judgment. The trial court dismissed several claims, but denied summary judgment on the constructive discharge claim against DOC and on the tortious interference and outrage claims against the individual defendants.

The trial court also denied a defense request to strike evidence that the Employment Security Department had granted unemployment compensation to Reninger and Cohen. It granted Reninger's and Cohen's motion to exclude any evidence or testimony regarding "[t]he existence of the hearing, results, findings, conclusions, plaintiffs' appeal from, or the decision of the Personnel Appeals Board relating to the discipline of Richard Reninger and/or William Cohen."

The jury returned a verdict for plaintiffs against Daniel, Scamahorn, and Shepherd on the constructive discharge and intentional interference claims; it found no liability on the part of defendant Callahan. The jury awarded Reninger $29,257 for past economic damages, $75,000 noneconomic damages, and $62,883 for future economic

damages. The jury awarded Cohen $63,189 for lost wages, $64,788 for other past economic damages, $100,000 for noneconomic damages, and $142,190 for future economic damages.

Reninger and Cohen then moved for attorney's fees, citing RCW 49.48.030. Reninger requested $36,856, and Cohen requested $108,066.80; each based his request upon his 40% contingent fee agreement (for economic damages only) with his attorney. The court awarded the requested amounts and ordered them to be paid by DOC.

DOC, Daniel, Scamahorn, and Shepherd appeal. They challenge the denial of their motion for summary judgment and the trial court's exclusion of evidence related to the PAB's hearing process and findings. Additionally, they challenge the denial of their motion for a directed verdict on the constructive discharge claim, the denial of a jury instruction related to Shepherd's discovery of the missing weapons, the denial of their motion to exclude evidence of the Employment Security Department's action, the denial of their motion to dismiss at the close of plaintiffs' case, and the award of attorney's fees.

## I

### DENIAL OF SUMMARY JUDGMENT

DOC presented three theories to support its motion for summary judgment of dismissal of Reninger's and Cohen's constructive discharge claim: (1) civil service remedies are exclusive for a claim of improper work assignment; (2) the trial court should have applied the doctrine of collateral estoppel to prevent Reninger and Cohen from denying they engaged in misconduct, and the doctrine, so applied, would have left no issue of material fact for resolution; and (3) the existence of civil service and WISHA remedies preclude a claim for constructive discharge. We find the first two theories meritorious and thus need not address the third.

■■ In reviewing an order of summary judgment, we

engage in the same inquiry as the trial court. *Marincovich v. Tarabochia*, 114 Wn.2d 271, 274, 787 P.2d 562 (1990).

> A summary judgment motion can be granted only when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach*, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The court must consider the facts in the light most favorable to the nonmoving party, and the motion should be granted only if, from all the evidence, reasonable persons could reach but one conclusion. *Wilson*, at 437.

*Marincovich*, 114 Wn.2d at 274. CR 56(c). Further, inadmissible evidence cannot support or defeat a summary judgment motion. *Vacova Co. v. Farrell*, 62 Wn. App. 386, 395, 814 P.2d 255 (1991).

A. Civil Service Remedies and Constructive Discharge

DOC's first claim requires us to determine, as a matter of law, whether Reninger and Cohen could sidestep the civil service process and file their challenge to their job reassignment directly in superior court. To answer this, we must examine the general civil service scheme.

The State Civil Service Law creates a merit system of personnel administration. *See* RCW 41.06 and RCW 41.64. The first section in chapter RCW 41.06 describes the law's purpose:

> The general purpose of this chapter is to establish for the state a system of personnel administration based on merit principles and scientific methods governing the appointment, promotion, transfer, layoff, recruitment, retention, classification and pay plan, removal, discipline, training and career development, and welfare of its civil employees, and other incidents of state employment. All appointments and promotions to positions, and retention therein, in the state service, shall be made on the basis of policies hereinafter specified.

RCW 41.06.010. Plaintiffs, as nonexempt public employees, were entitled to the protection of the State Civil Service Law, RCW 41.06. RCW 41.06.900; *Bishop v. State*, 77 Wn. App. 228, 235, 889 P.2d 959 (1995).

The Civil Service Law also provides for a personnel resources board, RCW 41.06.110 (formerly the personnel board; we refer to them both as "the Board"), which is empowered to adopt rules for the "reduction, dismissal, suspension, or demotion of an employee." RCW 41.06.150. Pursuant to this authority, the Board has adopted a comprehensive set of merit system rules governing the terms and conditions of state employment. *See* Title 356 WAC.

The Civil Service Law and these regulations give civil service employees the right to appeal a dismissal or demotion or any violation of civil service or merit system rules to the State Personnel Appeals Board (PAB). RCW 41.64.080, .090, and .100; RCW 41.06.170(2); WAC 358-20-010 and -020; *Goodman v. Employment Sec. Dep't*, 69 Wn. App. 98, 103, 847 P.2d 29 (1993). If dissatisfied with the decision of the PAB, the employee may appeal to superior court. RCW 41.64.130 and .140; RCW 41.06.170(2).

This elaborate system of rules, procedures, and remedies provides a vehicle and forum created specifically to resolve civil service employment relations claims. *See Kringel v. Department of Social & Health Servs.*, 47 Wn. App. 51, 53-54, 733 P.2d 592, *review denied*, 108 Wn.2d 1034 (1987); *Washington Fed'n of State Employees v. State Personnel Bd.*, 29 Wn. App. 818, 819-22, 630 P.2d 951 (1981); *Kerr v. Department of Game*, 14 Wn. App. 427, 429-32, 542 P.2d 467 (1975), *review denied*, 86 Wn.2d 1013 (1976). DOC argues that the language of the Civil Service Law and the comprehensive nature of the statutory safeguards and remedial process demonstrate a legislative intent that the resolution of civil service employee grievances occur in the administrative arena. Reninger and Cohen respond by noting that there is no case in this jurisdiction that limits the remedies of a civil servant to those available under the Civil Service Law.

■ We agree with both propositions. This case does raise an issue of first impression as to the potential remedies available to a civil service employee. Following a careful

scrutiny of the entire legislative and administrative framework, we agree that the Legislature intended that a civil service employee utilize the PAB and superior court appeal remedy before gaining access to superior court for additional remedies. Because Reninger and Cohen failed to use the administrative process to challenge their reassignment, we need not address the question of whether an employee who is successful in the administrative arena has the right to pursue *additional* remedies in a new action in superior court.

█ Here, we agree with DOC's description of Reninger and Cohen's claims as "simply employee relations disputes dressed up as torts." The reassignment to allegedly hazardous duty was the basis for the constructive discharge claims. As Reninger and Cohen failed to use the process to challenge the reassignment, they may not relabel the grievance and initiate a constructive discharge action in superior court.

> Constructive discharge occurs where an employer deliberately makes an employee's working conditions intolerable thereby forcing the employee to resign. To find constructive discharge, the trier of fact must be satisfied that the working conditions would have been so difficult or unpleasant that a reasonable person in the employee's position would have felt compelled to resign.

*Micone v. Town of Steilacoom Civil Serv. Comm'n*, 44 Wn. App. 636, 643, 722 P.2d 1369, *review denied*, 107 Wn.2d 1010 (1986) (citations omitted). The constructive discharge doctrine developed as a means of protecting at-will workers from employers who might create intolerable working conditions as a means of forcing a worker to resign, where public policy or statute would not otherwise allow the employer to terminate the worker. *Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 40 Wn. App. 630, 632, 700 P.2d 338 (1985).

In *Micone*, this court touched upon the use of the constructive discharge doctrine by a civil service employee,

stating: "We question whether the doctrine of constructive discharge even applies to employment governed by civil service rules. The doctrine is generally, if not exclusively, applied to employment at will situations. *See Barrett v. Weyerhaeuser Co. Severance Pay Plan*, 40 Wn. App. at 632." *Micone*, 44 Wn. App. at 643 n.2.

Four years later, Division One expressed similar concerns, stating: "We find that Albright's [constructive discharge] claim must fail. First, our courts have questioned whether the doctrine of constructive discharge applies to employment situations, such as the one encountered here, which are governed by civil service rules." *Albright v. State*, 65 Wn. App. 763, 768-69, 829 P.2d 1114 (1992).

The Washington Supreme Court has not yet spoken directly to this question, but in a 42 U.S.C. § 1983 case[2] it observed that the existence of appeal procedures through the Civil Service Board is

> relevant to show that [an employee's] employment situation was not necessarily so intolerable that he had to quit. It could be argued that a reasonable person would have attempted to take advantage of the other avenues of relief rather than quit. . . . [F]ailure to take advantage of administrative procedures [is] relevant to the issue of constructive discharge.

*Binkley v. City of Tacoma*, 114 Wn.2d 373, 388, 787 P.2d 1366 (1990).

Civil service employers are prevented by the civil service rules from contravening clear mandates of public policy, and the employees are protected by procedures that provide for the right to a public hearing on an appeal of a reduction, dismissal, suspension, or demotion. *See* RCW 41.06.170(2), RCW 41.64.110. Thus, civil servants cannot sue their employers for wrongful discharge in superior court; they can only contest their terminations to

---

[2]Under § 1983 a plaintiff need not exhaust administrative remedies as a prerequisite to bringing an action in court. *Patsy v. Board of Regents*, 457 U.S. 496, 512-16, 102 S. Ct. 2557, 73 L. Ed. 2d 172 (1982).

the PAB, exhausting their administrative remedies before pursuing an appeal in superior court. *See* WAC 356-34-010; WAC 358-30-210.

Further, as constructive discharge is merely a type of wrongful discharge, we see no reason why a worker claiming intolerable working conditions should have more remedies than a worker challenging an express discharge or dismissal. The tort of wrongful discharge developed as a narrow exception to the terminable-at-will doctrine to prevent private employers from contravening clear mandates of public policy. *Farnam v. CRISTA Ministries*, 116 Wn.2d 659, 668, 807 P.2d 830 (1991). It "is generally, if not exclusively, applied to employment at will situations." *Micone*, 44 Wn. App. at 643 n.2.

Reninger and Cohen claim that the civil service process was inadequate because the discipline imposed placed them in immediate danger. However, they failed to use any of the other options available such as simply refusing the reassignment while simultaneously challenging it through the civil service and WISHA processes. Had their administrative challenge been successful, they would have had no need to resign. Had it been unsuccessful, they could have appealed to superior court. By choosing to forego available administrative remedies, they did not open the door to otherwise unavailable relief. Thus, the trial court erred by denying DOC's motion for summary judgment of the constructive discharge claim.

### B. Collateral Estoppel and Intentional Interference

Because we hold that DOC was entitled to dismissal of the constructive discharge claim, we need not review the trial court's collateral estoppel ruling in relation to this claim. But the trial court's collateral estoppel ruling also is applicable to the intentional interference with a contractual relationship claims. If Reninger and Cohen are collaterally estopped from denying the PAB's finding of gross misconduct, their claim that coemployees wrongfully acted to have them discharged must fail. Thus, we

consider whether the trial court erred in denying collateral estoppel effect to the PAB determination.

Collateral estoppel is "a judicially created doctrine which promotes fairness by preventing relitigation of particular issues." *Dana's Housekeeping, Inc. v. Department of Labor & Indus.*, 76 Wn. App. 600, 612, 886 P.2d 1147, *review denied*, 127 Wn.2d 1007 (1995). Its purpose is "to promote the policy of ending disputes, to promote judicial economy and to prevent harassment of and inconvenience to litigants." *Hanson v. City of Snohomish*, 121 Wn.2d 552, 561, 852 P.2d 295 (1993) (footnote omitted). Four elements are required for application of the doctrine of collateral estoppel:

> (1) identical issues; (2) a final judgment on the merits; (3) the party against whom the plea is asserted must have been a party to or in privity with a party to the prior adjudication; and (4) application of the doctrine must not work an injustice on the party against whom the doctrine is to be applied.

*Southcenter Joint Venture v. National Democratic Policy Comm.*, 113 Wn.2d 413, 418, 780 P.2d 1282 (1989) (quoting *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 507, 745 P.2d 858 (1987)).

"[O]nly those issues actually litigated and necessarily determined are precluded." *Shoemaker*, 109 Wn.2d at 507. The burden of proof as to the propriety of applying the doctrine of collateral estoppel is on the party seeking its application, and we view all facts and inferences in the light most favorable to the opposing party. *Neff v. Allstate Ins. Co.*, 70 Wn. App. 796, 799, 855 P.2d 1223 (1993), *review denied*, 123 Wn.2d 1004 (1994).

Procedural differences in two proceedings will not necessarily bar application of collateral estoppel; courts seek to determine whether the parties to the earlier proceeding had a full and fair hearing on the issue. *Neff*, 70 Wn. App. at 801. Where the prior adjudication took place before an administrative body, collateral estoppel may be proper, depending upon additional factors, which include "(1)

whether the agency acting within its competence made a factual decision; (2) agency and court procedural differences; and (3) policy considerations." *Shoemaker*, 109 Wn.2d at 508 (quoting *State v. Dupard*, 93 Wn.2d 268, 275, 609 P.2d 961 (1980)). A civil service commission proceeding may be the basis for collateral estoppel in a subsequent lawsuit when the plaintiff received notice and had an opportunity to present evidence and legal arguments. *Shoemaker*, 109 Wn.2d at 507-13.

The trial court explained its reason for denying the application of collateral estoppel, as follows:

> The Court refuses to apply the Doctrine of Collateral Estoppel to the findings of the Personnel Appeals Board because of multiple issues raised in this lawsuit that were not before the Personnel Appeals Board, as well as two other complications: (1) the inconsistent decision of the Employment Security Department, and (2) the disparity of the relief sought in the lawsuit from that available in the administrative hearing.

The court's first reason is not persuasive because the underlying critical issue — whether Reninger and Cohen or others were responsible for the missing weapons — was identical in each forum. Nor does the second reason support the conclusion because it was error to consider the ruling of the Employment Security Department. The unemployment compensation statute specifically prohibits this use of the Commissioner's conclusions and orders.

> Any finding, determination, conclusion, declaration, or final order made by the commissioner, or his or her representative or delegate, or by an appeal tribunal, administrative law judge, reviewing officer, or other agent of the department for the purposes of Title 50 RCW, *shall not be conclusive, nor binding, nor admissible as evidence in any separate action* outside the scope of Title 50 RCW between an individual and the individual's present or prior employer before an arbitrator, court, or judge of this state or the United States, regardless of whether the prior action was between the same or related parties or involved the same facts or was reviewed pursuant to RCW 50.32.120.

RCW 50.32.097 (emphasis added).

Finally, the disparity of relief was not an adequate basis to exclude the PAB findings. As DOC acknowledges, there will always be a disparity between the relief available in a tort lawsuit as compared to that available following an administrative appeal. Had Reninger and Cohen prevailed in an administrative action, they could have obtained a reversal of the reassignment decision and recovered their lost wages during the demotion period. RCW 41.12.090. Their tort remedies included lost future wages, pain and suffering, loss of consortium, and attorney's fees. Further, as DOC notes, by deciding to resign, Reninger and Cohen increased the disparity between the relief available in a PAB hearing and their claimed damages.

The facts and law in this case satisfy the *Southcenter/ Shoemaker* four-part collateral estoppel test: (1) the PAB finding deals with the same issue of whether Reninger and Cohen engaged in misconduct or were set up by the defendants; (2) the PAB decision was a final judgment on the merits; (3) Reninger and Cohen were parties to the PAB proceeding; and (4) there is no injustice in applying the doctrine. In addition, the process and policy concerns here satisfy the *Shoemaker* three-part test for administrative adjudications: (1) the PAB made factual determinations; (2) Reninger and Cohen have not identified any significant agency court procedural differences; and (3) policy considerations dictate in favor of finality. Finally, the *Neff* test is also satisfied: Reninger and Cohen had the opportunity for a full and fair hearing on the misconduct charge in the administrative process.

All the above tests ask the court to consider policy issues. Here, a major concern is that a holding denying collateral estoppel effect to the PAB's findings would undermine the integrity of the civil service process. Allowing a worker to relitigate an issue earlier determined by the PAB would reduce the administrative process to that of a practice session or rehearsal; a worker satisfied with the PAB findings could accept them, one dissatisfied could

start over with a clean slate in superior court. This would not encourage a worker to take the civil service process seriously. And the evidence available to the jury would mischaracterize the process, leaving it without an understanding of the remedies available to a civil servant claiming unjust punishment.

Thus, we conclude that the application of collateral estoppel in this case would promote fairness and judicial economy and that the trial court erred in allowing Reninger and Cohen to relitigate the issue of their misconduct and their claim that the defendants "set them up." When we resolve those two factual disputes against Reninger and Cohen, it is clear that the intentional interference with a contractual relationship claim fails. The PAB specifically found that "[t]here was no evidence that anyone else had access to the weapons during the time in question and no credible evidence of collusion among others to implicate the [Reninger and Cohen]." Findings of fact XVIII and XIX for Cohen and Reninger, respectively. As there is no evidence raising an issue of material fact as to the defendants' misconduct, the defendants were entitled to summary judgment of dismissal of the interference with a contractual relationship claims.

## II

### EVIDENTIARY RULING

The exclusion of evidence regarding the PAB's processes and findings would necessitate a remand for a new trial had we not concluded that the defendants were entitled to summary judgment of dismissal. In addition to its collateral estoppel effect, evidence about the PAB was relevant "to show that [an employee's] employment situation was not necessarily so intolerable that he had to quit. It could be argued that a reasonable person would have attempted

to take advantage of the other avenues of relief rather than quit." *Binkley*, 114 Wn.2d at 389.

## III

### JURY INSTRUCTION

■■ DOC also assigns error to the trial court's failure to give its proposed supplemental instruction C, which states:

> Under the law, defendant Daniel's initial failure to reveal the involvement of Mr. Shepherd is not the proximate cause of any damage to the plaintiffs.

Jury instructions are sufficient if, read as a whole, they correctly state the law, are not misleading, and permit the parties to argue their respective theories of the case. *Bulzomi v. Department of Labor & Indus.*, 72 Wn. App. 522, 526, 864 P.2d 996 (1994). The giving of a particular jury instruction is within the discretion of the trial court; thus we review its refusal to administer a requested instruction for abuse of discretion. *Bulzomi*, 72 Wn. App. at 526.

Here, the court instructed the jury on proximate cause in instruction 18:

> The term "proximate cause" means a cause which in a direct sequence unbroken by any new independent cause, produces the event complained of and without which such event would not have happened.
>
> There may be one or more proximate causes of an event.

It also instructed the jury regarding the limitations on the jury's use of the evidence of Daniel's initial failure to reveal Shephard's involvement. Instruction 5 stated:

> Evidence has been introduced in this case on the subject of a prior wrong of a party for the limited purpose of motive. You must not consider this evidence for the purpose of establishing the character of that party or to show that he acted in conformity therewith.

We conclude that the instructions read as a whole were not misleading and allowed DOC to argue the theory it set forth in its proposed supplemental instruction C. The trial court did not abuse its discretion in denying DOC's proposed instruction.

## IV

### DISMISSAL AT CONCLUSION OF PLAINTIFFS' CASE

■ As we conclude that the trial court erred in denying the defense motion to dismiss both the constructive discharge and intentional interference with a contractual relationship claims on summary judgment, we find it unnecessary to address whether it was also error to deny DOC's motion to dismiss the constructive discharge claim at the conclusion of the plaintiffs' case. We do note, however, the general rule that where a defendant moves to dismiss for insufficient evidence at the close of the plaintiff's case, and then proceeds to present its case to the jury following denial of its motion, the defendant waives its challenge to the sufficiency of the evidence. *Goodman v. Bethel School Dist.* 403, 84 Wn.2d 120, 123, 524 P.2d 918 (1974); *Vasquez v. Department of Labor & Indus.*, 44 Wn. App. 379, 384, 722 P.2d 854 (1986). Thus, on appeal the defendant cannot contend that the denial of its motion for dismissal constituted error. *Goodman*, 84 Wn.2d at 123.

## V

### ATTORNEY'S FEES

Nor need we address DOC's argument that Reninger and Cohen were not entitled to attorney's fees award because of their failure to provide timely notice of their intent to seek such fees, pursuant to RCW 49.48.030, and their failure to segregate the time spent on the past wage loss issue under RCW 49.48.030 from the other issues in the case. Similarly, Reninger's and Cohen's request for attorney's fees on appeal pursuant to RAP 18.1 and RCW 49.48.030 is not at issue since they are not the prevailing party.

We reverse.

BRIDGEWATER and WIGGINS, JJ., concur.

After modification, further reconsideration denied November 1, 1995.

Review granted at 129 Wn.2d 1006 (1996).