[No. 13700-3-II.    Division Two.    April 17, 1992.]

WAYNE L. JAMISON, ET AL, *Appellants*, v. THE DEPART-
MENT OF LABOR AND INDUSTRIES, *Respondent*.

126

*Gary H. Branfeld* and *Branfeld & Associates,* for appellants.

*Kenneth O. Eikenberry, Attorney General,* and *Nancy E. Hovis, Assistant,* for respondent.

PETRICH, C.J. — Wayne L. Jamison, et ux, a sole proprietorship, and Wayne Jamison Timberfallers, Inc., a corporation (both collectively referred to as Jamison), challenge the orders of assessment of industrial insurance taxes by the Department of Labor and Industries (Department). Jamison's argument is twofold: The notices of assessment were invalid because they were not executed by the Director or the Director's designee; and the assessments for unpaid industrial insurance taxes were based on contractual arrangements for the falling and bucking of timber with independent contractors, who were not workers as contemplated by RCW 51.08.180.

Jamison's logging business was audited by June Karlsson, a field auditor for the Department of Labor and Industries.

Karlsson concluded that George Tuengel, John Holmchuck, Stephen Cox, Dan Richmond, Dave Moran, and Jack Campbell had contracted for "personal labor" with Jamison, which put them within the definition of "worker" under RCW 51.08.180; therefore, Jamison was obligated to pay industrial insurance taxes for them.

The Department issued two notices and orders of assessment of industrial insurance taxes. The notice issued to the sole proprietorship demanded payment of $6,706.74 of back taxes for the period from April 1, 1984, through December 31, 1984; the notice issued to the corporation demanded payment of $38,810.52 for the period from January 1, 1985, through March 31, 1986. Both were signed by Betty Lott, a collections auditor, on behalf of the Department.

The Board of Industrial Insurance Appeals affirmed the assessments. The Board's decision was, in turn, affirmed by the Thurston County Superior Court.

Pursuant to RCW 51.48.131, the Administrative Procedure Act (APA) governs appeals of this type at the superior court and appellate court level. Since the administrative action in this case commenced in 1987, the old version of the APA (RCW 34.04) applies. Under that version a court may reverse the decision of the agency

> if the substantial rights of the [party] have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> . . . .
>
> (d) affected by other error of law; or
>
> (e) clearly erroneous in view of the entire record as submitted and the public policy contained in the act of the legislature authorizing the decision or order; or
>
> (f) arbitrary and capricious.

Former RCW 34.04.130(6).[1]

---

[1] Jamison fails to properly assign error to various findings of the Board as specified in RAP 10.3 and RAP 10.4, which in some cases may limit review to a determination of whether the conclusions of law are supported by the unchallenged findings. *Fuller v. Department of Empl. Sec.*, 52 Wn. App. 603, 606, 762 P.2d 367 (1988), *review denied*, 113 Wn.2d 1005 (1989). However, failure to adhere strictly to the requirements of RAP 10.3 and 10.4 does not prohibit review of a finding where the nature of the challenge is clear and the

VALIDITY OF ASSESSMENTS

Jamison contends that the notices and orders of assessment were improperly issued because the Department failed to comply with RCW 51.48.120 which provides, in part:

> If any employer should default in any payment due to the state fund the director or the director's designee may issue a notice of assessment certifying the amount due[.]

The notices and orders of assessment here were signed by the collection auditor working for the Department of Labor and Industries. Jamison argues that the notices and orders of assessment issued to his corporation and his sole proprietorship were not valid because the collection auditor who signed them was not a designee of the Director under RCW 51.48.120.

■ At the hearing, an assistant director of the Department testified that the Director communicated to him in 1982 that he was delegating authority to collection auditors to issue notices and orders of assessment. The assistant director then communicated the directive to the collections supervisor that the authority to issue notices and orders of assessment had been delegated to collection auditors. Because the relevant statute, excerpted above, does not require that the delegation follow any specific procedure or take any specific form, the Board's finding that such a delegation took place was not clearly erroneous.

Jamison also argues that, assuming there was a delegation of authority, the Director's delegation constituted rulemaking and was thus subject to the terms of the APA requiring a public hearing and other procedures not followed there. The relevant portion of former RCW 34.04.010, which applies to this action because it was commenced prior to July 1, 1989, specifically excludes "statements concerning

challenged finding is set forth in Jamison's brief. *Green River Comm'ty College Dist. 10 v. Higher Educ. Personnel Bd.*, 107 Wn.2d 427, 431, 730 P.2d 653 (1986). Jamison sets out an accurate paraphrase of the relevant portions of the challenged findings of fact; therefore, this court will review these findings to determine whether they were clearly erroneous.

only the internal management of an agency and not affecting private rights or procedures available to the public" from the definition of "rule". RCW 34.04.010 (recodified July 1, 1989).

■ "Rulemaking" has been defined as

legislation on the administrative level, i.e., legislation within the confines of the granting statute, as required by the constitution and its doctrine of non-delegability and separability of powers.

*Senior Citizens League, Inc. v. Department of Social Sec.*, 38 Wn.2d 142, 168, 228 P.2d 478 (1951). The delegation of the power to issue notices and orders of assessment can scarcely be characterized as a legislative activity. Rather, it is more akin to a "statement[] concerning only the internal management of an agency and not affecting private rights or procedures available to the public," which is explicitly excluded from the definition of "rule" under former RCW 34.04.010(2). Accordingly, the delegation of authority by the Director in this case was not a "rule" subject to the constraints of the Administrative Procedure Act.

### INDEPENDENT CONTRACTORS AS WORKERS

Jamison's next contention is that the Board was incorrect when it found that six of Jamison's tree cutters were workers within the meaning of RCW 51.08.180, the statute defining worker for the purposes of the Industrial Insurance Act.

■ Under the Industrial Insurance Act employers are required to pay industrial insurance taxes for workers covered under the act. RCW 51.16.035 *et seq.* "Worker" is given an expansive meaning under the statute:

[E]very person in this state who is engaged in the employment of an employer under this title, whether by way of manual labor or otherwise in the course of his or her employment; also every person in this state who is engaged in the employment of or who is working under an independent contract, the essence of which is his or her personal labor for an employer under this title, whether by way of manual labor or otherwise, in the course of his or her employment . . ..

RCW 51.08.180.

Initially, Jamison argues that the common law definition of "employee" should be used. However, whether the log cutters were "employees" is irrelevant because the definition of "worker" under RCW 51.16.035 includes both employees and those independent contractors working under a contract, "the essence of which is his or her personal labor for an employer". The issue then is whether the independent contractors in this case were working under contracts, the essence of which was personal labor for Jamison.

■ The test for determining whether the essence of an independent contractor's contract is personal labor was set out in *White v. Department of Labor & Indus.*, 48 Wn.2d 470, 294 P.2d 650 (1956). In *White*, the Washington Supreme Court was asked to construe the phrase "independent contract, the essence of which is his personal labor", contained in the predecessor statute to RCW 51.08.180(1). The *White* court held that the essence of an independent contract is not personal labor and will not come under the purview of the Industrial Insurance Act if it was intended to cover an independent contractor

> (a) who must of necessity own or supply machinery or equipment (as distinguished from the usual hand tools) to perform the contract . . . or (b) who obviously could not perform the contract without assistance . . . , or (c) who of necessity or choice employs others to do all or part of the work he has contracted to perform[.]

*White*, at 474. The *White* court held that since the claimant in this case was required to furnish her own donkey engine under the independent contract, the claimant could not perform the contract by herself, and the claimant did in fact choose to employ another person to do part of the work, the contract did not involve personal labor and did not come under the purview of the Industrial Insurance Act. *White*, at 477.

This Division considered a case involving the very same issue in *Lloyd's of Yakima Floor Ctr. v. Department of Labor & Indus.*, 33 Wn. App. 745, 662 P.2d 391 (1982). In *Lloyd's* the Department assessed industrial insurance taxes against

a carpet retailer who hired independent contractors to install carpets purchased at its store. *Lloyd's*, at 747. Based on the unchallenged findings of fact that the carpet layers had their own small tools worth several hundred dollars, drove their own trucks to jobsites, did not have any employees, and were experts in the profession, the court held that the essence of the contracts was in fact personal labor. *Lloyd's*, at 751. The court held that part (a) of the *White* test, *supra*, was not met because the tools and the truck were not the primary object of the agreement. *Lloyd's*, at 751. Since the contract could be and was performed by the installers without assistance, parts (b) and (c) of the *White* test were also not met. *Lloyd's*, at 752.

Here the Board found that independent contractors working for Jamison supplied personal labor and consequently were "workers" under RCW 51.08.180. The factual findings will be upheld unless they are clearly erroneous.

The first prong of the *White* test is whether the independent contractor "must of necessity own or supply machinery or equipment (as distinguished from the usual hand tools) to perform the contract". *White*, at 474. The record reflects that all but one of the independent contractors supplied only the usual hand tools such as power saws, axes, wedges, and tape measures when they worked as independent contractors for Jamison. George Tuengel testified that he often used a Cat tractor to perform some of the work under his contract with Jamison. However, the evidence does support the finding that the labor and not the Cat was the primary object of the agreement.[2] The record shows that the finding that the first prong of the *White* test was not met is not clearly erroneous.

Under the second prong of *White*, the essence of an independent contract is not personal labor if the independent contractor "obviously could not perform the [work] without assistance." *White*, at 474. The evidence in this case clearly supports the contrary conclusion. Paragraph 8 of the

---

[2]Additionally, Jamison testified that the use of heavy equipment or machinery was not necessary to complete the contracts.

form contract signed by the independent contractors working for Jamison states

> [t]he Contractors shall not assign this agreement or subcontract all or any part of the work without consent of Wayne L. Jamison, Inc.

Based on this provision and the testimony taken in this case, it was not clearly erroneous to conclude that Jamison's independent contractors could perform their work without assistance.

Under the third prong of *White*, the essence of a contract with an independent contractor will not be deemed personal labor if the independent contractor "of necessity or choice employs others to do all or part of the work he has contracted to perform." *White,* at 474. In *Department of Labor & Indus. v. Tacoma Yellow Cab Co.,* 31 Wn. App. 117, 639 P.2d 843, *review denied,* 97 Wn.2d 1015 (1982), this Division considered whether cabdrivers who leased taxicabs from the cab company were "workers" of the company for the purposes of the act. The lease under which the drivers leased the taxicabs provided:

> The taxi cab shall not be operated by any person except by the Lessee or his regular employees. And such employees shall be duly qualified and licensed to drive and over the age of 25 years.

*Tacoma Yellow Cab,* at 123. In spite of the fact that this lease clearly anticipated that the lessee could permit another person to perform work under the lease, the court held that the essence of the leases was the personal labor of the lessee, and thus the drivers were "workers" within the meaning of RCW 51.08.180. *Tacoma Yellow Cab,* at 124.

The approach taken by the court in *Tacoma Yellow Cab* looked to the "realities of the situation" rather than the technical requirements that the independent contractor could not or did not hire anyone else to perform work under the contract. Specifically, the court looked to the fact that lease drivers performed essentially the same function as the

drivers who in fact were employees of the taxi company. *Tacoma Yellow Cab*, at 124. The fact that the drivers could and did allow others to perform their work under the lease agreement was not in itself dispositive of whether the drivers were in fact supplying personal labor.

Applied to the facts in this case, the subcontractors working for Jamison would also be "workers" under RCW 51.08-.180 because they were performing the same function as those timber fallers who were not working under independent contracts. Although there was some evidence suggesting that one or two of the timber fallers may have had part-time employees helping them with the contract, looking to the realities of the situation it was not clearly erroneous for the Board to find that all of Jamison's independent contractors were "workers" within the meaning of the act.

## BURDEN OF PROOF

Jamison argues that the auditor failed to carry her burden of proof at the audit level. Jamison does not cite any authority establishing the burden of proof for an auditor at the audit level. Under RCW 51.48.131 the employer has the burden of proof on appeal to show that the assessments are incorrect. As outlined above, Jamison did not meet that burden.

Accordingly, we affirm the decision of the Board of Industrial Insurance Appeals.

ALEXANDER and MORGAN, JJ., concur.