[No. 14968-1-II.   Division Two.   June 30, 1993.]

PETER M. BLACK REAL ESTATE CO., INC., *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*

484

*Stephen E. Oliver* and *Platt, Irwin, Colley, Oliver & Wood,* for appellant.

*Christine O. Gregoire, Attorney General,* and *John R. Wasberg, Assistant,* for respondent.

SEINFELD, J. — Peter M. Black Real Estate Co., Inc., challenges a Department of Labor and Industries assessment for past-due industrial insurance premiums for real estate agents associated with the company. The Superior Court affirmed the Department. We also affirm.

Black Real Estate is in the real estate sales and brokerage business. Peter Black owns Black Real Estate and is its designated real estate broker. Six real estate agents acted under Black's brokerage license during the assessment period. The agents are independent contractors.

Based on its determination that the agents were workers under RCW 51.08.180(1), the Department assessed the company for past-due industrial insurance premiums for the agents. The company appealed to the Board of Industrial Insurance Appeals. The Board found that the agents were not authorized to hire other persons to list or sell property on their behalf and that the agents worked under contracts, the essence of which was the agents' personal labor. It concluded the agents were workers within the meaning of the industrial insurance statute. Black challenges the Board's findings.

The findings are supported by evidence that Black Real Estate has a written contract with each agent. Under each contract, Black is to provide listings and assist the agent; the agent is obligated to "work diligently and with his best efforts to sell, lease, or rent any and all real estate listed with the broker" and "to solicit additional listings and customers." The agent is also required to act in such a way "as to maintain and to increase the good will and reputation of the broker." The agent receives a fixed percentage of the sales commission upon its receipt by the broker; only the broker can sue for unpaid commissions. Black Real Estate does not pay the agents a salary.

Black Real Estate provided the agents with office space, desks, a computer system, a copier and supplies, office electricity, telephones, long distance phone calls, most advertising, signs, stationery, memo pads, stamps, bathroom supplies, beverages, and legal advice. The agents provided their own cars, cameras, and other business supplies, and were responsible for other expenses they incurred.

Peter Black, as designated broker, supervised the conduct of the agents for any illegality. He did not supervise or direct their day-to-day selling activities, but he did review their earnest money and listing agreements.

During the assessment period, the agents were not required to work specific hours, work in the office, or attend meetings. According to the testimony, performing the duties

of a real estate agent to sell and obtain listings involves a great deal of personal effort making contacts throughout the community. Most of the agents' work is performed outside the office during irregular hours. Agents incur expenses and receive no salary. Thus, they may lose money in any given period.

It was not unusual for Black's agents to hire a variety of contractors to perform services on listed property before a sale to satisfy a buyer's condition or after a sale to avoid liability for previously unnoted defects. Prior to retaining a contractor, the agents usually arranged for buyer or seller reimbursement for the cost of these services. If neither buyer nor seller was willing to pay for services rendered, or if no sale occurred, the agent was personally responsible for the expense.

Black Real Estate is a member of the Sequim/Dungeness Multiple Listing Service (MLS). Brokers participating in the MLS must submit their listings for distribution by the MLS to other participating brokers. Under the MLS rules, participating brokers may present offers for property listed with another broker, usually through the listing broker. The listing broker specifies the compensation to be offered other MLS participants for their work as subagents in selling the listing. Pursuant to Black's agent contract, Black paid its agents a different percentage share of commissions when the agent sold a property listed with the MLS or when an MLS participant sold a Black listing.

Black's agents commonly split commissions and shared duties among themselves. An agent could and would arrange for another Black agent to work on the first agent's listing in exchange for a portion of the commission.

### STANDARD OF REVIEW

■ We review administrative decisions on the administrative record, not the record of the superior court. *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 323-24, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983). Black had the burden of proof to show that the taxes assessed were incorrect in

its appeal to the Board of Industrial Insurance Appeals; our review of the Board's decision in an assessment case is governed by the Administrative Procedure Act. RCW 51.48.131; *Jamison v. Department of Labor & Indus.*, 65 Wn. App. 125, 127, 133, 827 P.2d 1085 (1992). The agency proceeding in this case began before July 1, 1989, and thus is governed by the former pre-1988 Administrative Procedure Act, RCW 34.04. RCW 34.05.902.

■ Under the former APA, we review agency factual findings for clear error. Former RCW 34.04.130(6)(e); *Sellers*, 97 Wn.2d at 324-25. A finding is clearly erroneous when, after reviewing the entire record and in light of the policy of the act, we are left with the definite and firm conviction that a mistake was made. Former RCW 34.04.130(6)(e); *Sellers*, 97 Wn.2d at 324.

■ We review claimed errors of law de novo; we may substitute our judgment for that of the administrative body. *Sellers*, 97 Wn.2d at 325. We review a challenge that presents a "mixed" question of law and fact by determining the law independently of the agency determination and then applying the law to the facts as found by the agency. *Sellers*, 97 Wn.2d at 329-30.

■ Black did not assign error to any of the Board's findings. However, as its brief sets forth the findings and indicates a challenge to certain of them, we will review the findings so challenged for clear error. *Jamison*, 65 Wn. App. at 127 n.1. Black also challenges the application of RCW 51.08.180(1) to the facts of this case.

### WASHINGTON REAL ESTATE LICENSING LAW

The sale of real estate is a highly regulated profession. We briefly note several statutes that control the agent/broker relationship. Brokers are responsible for the conduct of agents licensed under them. RCW 18.85.155. Brokers must adequately supervise their licensed agents or face sanctions. RCW 18.85.230(25). Brokers are to retain the licenses of agents working under them and must return the license of any agent who ceases to represent the broker to the State. RCW 18.85-

.320. The broker's name must appear on the agent's advertisements. RCW 18.85.230(11). Brokers may divide their commissions only with agents licensed to work for them or with other brokers; agents are prohibited from dividing their commissions with any person, except through their brokers. RCW 18.85.330. Agents may accept commissions only from the broker with whom they are licensed. RCW 18.85.230(22). In general, agents must work with a broker to sell and list real estate and can sell and list only for the one broker with whom they associate. *See* RCW 18.85.010(1), (2); .230(11), (22); .320; .330.

## "Worker" Status

The primary issue in this case is whether the company's agents are workers under RCW 51.08.180(1). If they are, the company must pay industrial insurance premiums for the agents.

■ Under Washington's industrial insurance laws, an independent contractor is a worker if "the essence of" the contract "is his or her personal labor for an employer". RCW 51.08.180(1). The Legislature clearly intended to broaden the definition of worker when it adopted the personal labor standard for independent contractors in 1937. *Lloyd's of Yakima Floor Ctr. v. Department of Labor & Indus.*, 33 Wn. App. 745, 748-49, 662 P.2d 391 (1982). We look to the realities of the situation rather than the technical requirements of the test in determining whether the contractor is primarily providing personal labor. *Department of Labor & Indus. v. Tacoma Yellow Cab Co.*, 31 Wn. App. 117, 124, 639 P.2d 843, *review denied*, 97 Wn.2d 1015 (1982); *accord, Jamison*, 65 Wn. App. at 132-33.

■ *White v. Department of Labor & Indus.*, 48 Wn.2d 470, 294 P.2d 650 (1956) provides three factors to consider in determining whether the essence of a contract is personal labor for an employer. The essence of a contract is not personal labor if the independent contractor:

(a) . . . must of necessity own or supply machinery or equipment (as distinguished from the usual hand tools) to perform the contract . . ., or (b) . . . obviously could not perform the

contract without assistance . . ., or (c) . . . of necessity or choice employs others to do all or part of the work he has contracted to perform . . ..

48 Wn.2d at 474; *Jamison*, 65 Wn. App. at 130.

█ The first two prongs of the *White* test are not met. The cars and other equipment provided and used by the agents here are not the primary object of the contract and thus do not disqualify the agents from worker status under the first prong. *Lloyd's*, 33 Wn. App. at 751-52; *accord, Jamison*, 65 Wn. App. at 131. The company does not claim that the agents "obviously could not perform the contract without assistance", the second prong.

Black contends that the agents are not workers under the third prong because they *choose* to employ others to do all or part of the work the agents contracted to perform. It argues that this case is controlled by *Massachusetts Mut. Life Ins. Co. v. Department of Labor & Indus.*, 51 Wn. App. 159, 752 P.2d 381 (1988). In that case, the court concluded that insurance sales agents were not workers because they could and did delegate significant portions of their duties to contact clients and sell policies. 51 Wn. App. at 165. With the exception of signing the policy, the contract between the company and the agents authorized the agents to delegate all their duties. 51 Wn. App. at 162. It was not uncommon for agents to hire telephone solicitors to contact clients and make sales. 51 Wn. App. at 162.

Black claims the real estate agents here are like the insurance agents in *Massachusetts Mut.* because the agents hire independent contractors to facilitate closings, because they sometimes share selling duties and commissions within the office, and because other agents may sell their listings through the MLS. These arguments are not persuasive.

█ The real estate agents' duties are to obtain and sell listings. They do not delegate either of these duties when they hire independent contractors to make repairs to properties, perform inspections, or do title searches. The independent contractors carry out ancillary tasks. Although they may make the property more attractive for sale, the inde-

pendent contractors retained by the agents do not participate in listing or selling the property. In fact, the agents are prohibited by statute, as discussed above, from hiring anyone to perform their contractual responsibilities of listing or selling real estate. RCW 18.85.330, .100, .170.

Nor are Black's agents employing others to perform their work when they agree to assist each other and share the commission. All the listings are officially the broker's. This situation presents co-workers joining together to market the company's product, real estate listings. The agents are then compensated according to their proportionate effort. Sharing work with other co-workers does not disqualify a person from worker status.

Black argues that its membership in the MLS means that its agents are able to delegate both their duties; they can sell listings obtained by other agents and their listings can be sold by other agents. Again, we are not persuaded.

Any delegation is made by the broker; by listing properties with the MLS, he allows other brokers and their agents to obtain offers for his listings. When an outside agent sells a property listed with a Black agent, it is Black, not the real estate agent, that delegated the selling duty to that outside agent and Black, not the real estate agent, that sets the compensation paid to that outside agent. The broker's membership in the MLS does not alter the basic nature of an agent's contract.

In examining the "realities of the situation", it is clear that real estate agents must work for one broker; only that broker can pay them. The agents can share their commissions only through their broker and they are not legally authorized to hire others to perform their licensed function for the broker. The contracts here required a great deal of personal labor; in order to list and sell property, the agents had to make and maintain contacts community-wide. The agents are not excluded from worker status under the third *White* factor.

The Board's findings of fact were not clearly erroneous. The agents were not authorized to hire other persons to list

or sell property on their behalf and they worked under contracts, the essence of which was personal labor. Nor did the Board err in applying the law to the facts.

The Board's decision affirming the Department's assessment for industrial insurance premiums against Peter M. Black Real Estate Co., Inc., is affirmed.[1]

ALEXANDER, C.J., and MORGAN, J., concur.

---

[1]Black Real Estate also assigns error to the Superior Court's refusal to grant reconsideration of its decision, but does not separately argue this assignment. Without argument or authority to support it, an assignment of error is waived. *Smith v. King,* 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986). Black included in its appellate brief the arguments made to the Superior Court in support of reconsideration, and we have considered them.