[No. 34504-8-II. Division Two. July 17, 2007.]

CRYSTAL E. MALANG, *Respondent*, v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Appellant*.

---

Robert M. McKenna, Attorney General, and Barbara N. Bailey, Assistant, for appellant.

Terry J. Barnett, for respondent.

¶1 HOUGHTON, C.J. — The Department of Labor and Industries (L&I) appeals from an order reversing its calculation of Crystal Malang's wages. The plain language of RCW 51.08.178(1) provides that "wages" are remuneration from an employer. Further, RCW 51.08.070(1), .180(1), and .195 provide tests to determine whether Crescent Realty, Inc., or Malang's sole proprietorship is her employer. Because the Board of Industrial Insurance Appeals (BIIA) determined that she was her own employer without reference to the statutory requirements, we affirm in part, reverse in part, and remand to L&I to determine

whether Malang or Crescent is her employer and to recalculate her wages accordingly.

## FACTS

¶2 Malang is a real estate agent associated with Crescent as an independent contractor. By agreement, she and Crescent split commissions she earns from real estate sales and listings after Crescent deducts brokerage expenses and transaction fees. She operates as a sole proprietorship and incurs business expenses that she reports to the Internal Revenue Service as deductions.

¶3 In November 2001, Malang suffered a work-related injury and filed a claim for benefits under her optional industrial insurance.[1] To calculate her wages,[2] L&I deducted the business expenses she declared in her 2001 federal tax return and the brokerage fees from her total commissions, arriving at total yearly wages of $53,283.[3]

¶4 Malang appealed the order, arguing that L&I should calculate her wages from her total commissions without deducting brokerage fees or business expenses. The industrial appeals judge (IAJ) concluded that L&I's method of calculating her wages was correct but remanded to recalculate her monthly wage based on commissions and expenses incurred over a 12-month period. The BIIA agreed, concluding that the correct way to calculate her wages was

---

[1] The record is unclear whether Crescent paid some of her industrial insurance premiums. Malang introduced commission vouchers showing "industrial insurance" expenses deducted from the gross commission paid to Crescent, suggesting they shared the cost of the premiums. But in her testimony, she suggested that she paid her own industrial insurance premiums.

[2] L&I calculates the appropriate rate of time-loss compensation as a percentage of the claimant's gross monthly wages, taking into account the claimant's marital status and number of dependents.

[3] L&I did not deduct the amount Malang declared as vehicle depreciation.

by dividing her net business income by the number of months worked in 2001.[4]

¶5 Malang appealed the decision to the superior court and moved for summary judgment, arguing that the BIIA erred in deducting her itemized business expenses from her total commissions to calculate her wages. The superior court granted her motion, ruling that L&I lacked statutory authority to deduct expenses necessary for the production of her wages. Accordingly, the superior court ordered L&I to calculate her benefits based on the total commissions that she earned in 2001. L&I now appeals.

## ANALYSIS

¶6 The parties dispute the meaning of the term "wages" as applied to an independent contractor and sole proprietor who works on a commission basis. L&I contends that Malang's wages equal her net income, categorizing her commissions as gross receipts and deducting her necessary business expenses to arrive at her take-home pay. She responds that "wages" means gross earnings under the statute's language and deducting business expenses from her total commissions exceeds L&I's statutory authority. This issue is one of first impression.

¶7 In reviewing a BIIA decision under the Industrial Insurance Act (IIA), Title 51 RCW, the superior court considers the issues de novo, relying on the certified board record. *Watson v. Dep't of Labor & Indus.*, 133 Wn. App. 903, 909, 138 P.3d 177 (2006). The superior court's ruling is subject to the ordinary rules governing civil appeals. RCW 51.52.140; *Romo v. Dep't of Labor & Indus.*, 92 Wn. App. 348, 353, 962 P.2d 844 (1998). The appellate court reviews the superior court's grant of summary judgment de novo to determine whether the evidence shows " 'that there is no genuine issue as to any material fact and that the moving

---

[4] Unlike the IAJ, the BIIA determined that her monthly wage should be calculated by dividing her 2001 income by 11 months, not 12. This increased her average monthly wage to $4,843.91 from $4,440.25.

party is entitled to a judgment as a matter of law.' " *Romo*, 92 Wn. App. at 354 (quoting CR 56(c)).

██ ¶8 The meaning of the term "wages" as applied to a sole proprietor requires interpreting RCW 51.08.178 and is therefore a question of law that we review de novo. *Rose v. Dep't of Labor & Indus.*, 57 Wn. App. 751, 757, 790 P.2d 201 (1990). Although L&I's interpretation of the IIA is not binding, we give it deference. *Doty v. Town of S. Prairie*, 155 Wn.2d 527, 537, 120 P.3d 941 (2005). But deference is inappropriate if the agency's interpretation conflicts with its statutory directive. *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 812, 16 P.3d 583 (2001).

██ ¶9 Our goal in interpreting a statutory term is to carry out the legislature's intent, giving meaningful effect to its chosen language. *Doty*, 155 Wn.2d at 533. The legislature has directed us to construe the terms of the IIA liberally, bearing in mind its purpose of compensating all workers injured in the course of their employment and resolving any doubts in the workers' favor. *Cockle*, 142 Wn.2d at 811 (quoting RCW 51.12.010).

██ ¶10 Despite inclusion in a chapter entitled "Definitions," RCW 51.08.178 does not define the term "wages." *See Doty*, 155 Wn.2d at 541 ("The IIA sets forth in detail how wages are calculated but does not definitively establish a definition of what constitutes 'wages.' "). Instead, that section establishes monthly wages as the basis for time-loss compensation and sets forth several ways to compute them:

(1) For the purposes of this title, the monthly wages the worker was receiving from all employment at the time of injury shall be the basis upon which compensation is computed unless otherwise provided specifically in the statute concerned. In cases where the worker's wages are not fixed by the month, they shall be determined by multiplying the daily wage the worker was receiving at the time of the injury:

. . . .

The term "wages" shall include the reasonable value of board, housing, fuel, or other consideration of like nature received from the employer as part of the contract of hire, but

shall not include overtime pay except in cases under subsection (2) of this section. However, tips shall also be considered wages only to the extent such tips are reported to the employer for federal income tax purposes. The daily wage shall be the hourly wage multiplied by the number of hours the worker is normally employed. The number of hours the worker is normally employed shall be determined by the department in a fair and reasonable manner, which may include averaging the number of hours worked per day.

. . . .

(4) In cases where a wage has not been fixed or cannot be reasonably and fairly determined, the monthly wage shall be computed on the basis of the usual wage paid other employees engaged in like or similar occupations where the wages are fixed.

RCW 51.08.178. Thus, we turn to L&I's first argument.

### REASONABLE AND FAIR CALCULATION

¶11 First, L&I argues that because RCW 51.08.178 does not apply to self-employment income, subsection (4) allows it to "reasonably and fairly" calculate Malang's wages as a portion of her gross business receipts. Appellant's Br. at 28. Although we agree that this provision authorizes L&I to reasonably and fairly calculate her wages, L&I has failed to correctly apply the IIA in this case.

¶12 RCW 51.08.178(1) is the default provision unless another statute specifically applies. *Dep't of Labor & Indus. v. Avundes*, 140 Wn.2d 282, 290, 996 P.2d 593 (2000). L&I correctly notes that because Malang receives commissions rather than a periodic wage, the calculation methods set forth in RCW 51.08.178(1) do not apply. But under the terms of RCW 51.08.178(4), subsection (1) does not provide the exclusive means of computing wages. RCW 51.08.178(4) allows the use of a comparable wage in situations where the wage "has not been fixed *or cannot be reasonably and fairly determined.*" (Emphasis added.)

¶13 To discern the legislature's intent, we may look to related statutes in order to give effect to all provi-

sions. *Doty*, 155 Wn.2d at 533; *see also Judd v. Am. Tel. & Tel. Co.*, 152 Wn.2d 195, 203, 95 P.3d 337 (2004). Here, reading RCW 51.08.178(1) and (4) together, the legislature intended that wages actually paid should determine the appropriate rate of time-loss compensation, so long as the wage is set as a fixed amount or can be fairly and reasonably ascertained. Accordingly, RCW 51.08.178(1) gives the BIIA authority to fairly and reasonably calculate Malang's "wages."

CALCULATING AN INDEPENDENT CONTRACTOR'S "WAGES"

¶14 Although RCW 51.08.178(1) requires that L&I calculate Malang's time-loss compensation award by reasonably and fairly determining her "wages," it does not set forth a way to translate the earnings of an independent contractor into wages. Accordingly, it is necessary to look to other provisions of the IIA to determine the wages of an independent contractor.

¶15 When possible, courts define statutory terms by their ordinary meaning. *See Cockle*, 142 Wn.2d at 807-08; *In re Testamentary Trusts Created for Benefit of Barovic*, 128 Wn. App. 196, 200, 114 P.3d 1230 (2005). The plain meaning of "wages" is remuneration from the employer in exchange for work performed. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2568 (2002); BLACK'S LAW DICTIONARY 1610 (8th ed. 1999); *see also Doty*, 155 Wn.2d at 542 (" '[W]ages,' simply stated, refer to the monetary remuneration for services performed."); *Rose*, 57 Wn. App. at 758 ("We construe the term 'wage,' therefore, to include any and all forms of consideration received by the employee from the employer in exchange for work performed.").[5] This definition is consistent with RCW 51.08.178(1), which describes

---

[5] We note that under current law, "wages" do not consist of "any and all forms of consideration" paid by the employer, but rather " 'readily identifiable and reasonably calculable in-kind components of a worker's lost earning capacity at the time of injury that are critical to protecting workers' basic health and survival.' " *Gallo v. Dep't of Labor & Indus.*, 155 Wn.2d 470, 482, 120 P.3d 564 (2004) (quoting *Cockle*, 142 Wn.2d at 822). Despite this limitation, the *Rose* court's

"wages" as including "the reasonable value of board, housing, fuel, or other consideration of like nature *received from the employer*." (Emphasis added.)

¶16 Thus, determining whether income constitutes "wages" requires identifying the amount of income an employer paid in remuneration for work.[6]

¶17 The IIA " 'is a self-contained system that provides specific procedures and remedies for injured workers.' " *Dep't of Labor & Indus. v. Granger*, 159 Wn.2d 752, 762, 153 P.3d 839 (2007) (quoting *Brand v. Dep't of Labor & Indus.*, 139 Wn.2d 659, 668, 989 P.2d 1111 (1999)). Examining related provisions of the IIA, it is evident that the legislature anticipated the unique situation of independent contractors and provided explicit standards to determine whether they should be treated as "employers" or "workers" when seeking time-loss compensation.

¶18 The IIA's definition of "employer" is broadly drafted to include those who hire independent contractors. RCW 51.08.070 states that an "employer" includes any person or entity "who contracts with one or more workers, the essence of which is the personal labor of such worker or workers." Similarly, RCW 51.08.180(1) defines "worker" as "every person in this state who is engaged in the employment of or who is working under an independent contract, the essence of which is his or her personal labor for an employer."

¶19 The legislature adopted a broad definition of "worker" to eliminate the technical distinction between employees and independent contractors. *Lloyd's of Yakima Floor Ctr. v. Dep't of Labor & Indus.*, 33 Wn. App. 745, 748-49, 662 P.2d 391 (1982) (discussing *White v. Dep't of*

___

holding that "wages" consist of consideration paid by an employer to an employee remains an accurate statement of law.

[6] Analyzing the terms "employer," "worker," and "wages" together to determine coverage under the IIA is not novel. In *Doty*, our Supreme Court considered whether a volunteer fire fighter was an "employee" or "worker" under the IIA. 155 Wn.2d at 539. The court concluded that the fire fighter was not an "employee" because she did not receive "wages." *Doty*, 155 Wn.2d at 545. Although the town paid her stipends for drills and responding to calls, as well as premiums for death and disability insurance and a retirement pension, the court held that none of these benefits constituted remuneration for her work. *Doty*, 155 Wn.2d at 542-45.

*Labor & Indus.*, 48 Wn.2d 470, 294 P.2d 650 (1956)). By collapsing the distinction, the legislature intended to extend the IIA's coverage to independent contractors " 'whose *personal efforts* constitute the main essential in accomplishing the objects of the employment.' " *Lloyd's*, 33 Wn. App. at 749 (quoting *Norman v. Dep't of Labor & Indus.*, 10 Wn.2d 180, 184, 116 P.2d 360 (1941)).

¶20 Thus, we have developed tests to determine whether the essence of an independent contract is personal labor, examining the contract itself, the work to be performed, the parties' situation, and any other relevant circumstances. *Lloyd's*, 33 Wn. App. at 749. A contract is not for personal labor if the independent contractor

"(a) . . . must of necessity own or supply machinery or equipment (as distinguished from the usual hand tools) to perform the contract . . . , or (b) . . . obviously could not perform the contract without assistance . . . , or (c) . . . of necessity or choice employs others to do all or part of the work he has contracted to perform . . . ."

*Peter M. Black Real Estate Co. v. Dep't of Labor & Indus.*, 70 Wn. App. 482, 488-89, 854 P.2d 46 (1993) (alterations in original) (quoting *White*, 48 Wn.2d at 474); *Lloyd's*, 33 Wn. App. at 749.

¶21 Accordingly, in calculating the "wages" of an independent contractor, L&I must first apply these tests to determine whether the essence of the contract is personal labor. If it is not, the inquiry ends; the independent contractor is not a worker under RCW 51.08.180(1), and any payment he or she receives under the contract is not remuneration for services constituting "wages." Under such circumstances, it could be fair and reasonable to consider the contractor's business structure, profits, salary, benefits, and other relevant factors in calculating the "wages."

¶22 But if the essence of the contract is personal labor, the next step is to analyze the business arrangement to determine whether it constitutes "employment." RCW 51.08.195 creates an exception to the rule that independent contractors for personal labor are "workers":

[S]ervices performed by an individual for remuneration shall not constitute employment subject to this title if it is shown that:

(1) The individual has been and will continue to be free from control or direction over the performance of the service, both under the contract of service and in fact; and

(2) The service is either outside the usual course of business for which the service is performed, or the service is performed outside all of the places of business of the enterprise for which the service is performed, or the individual is responsible, both under the contract and in fact, for the costs of the principal place of business from which the service is performed; and

(3) The individual is customarily engaged in an independently established trade, occupation, profession, or business, of the same nature as that involved in the contract of service, or the individual has a principal place of business for the business the individual is conducting that is eligible for a business deduction for federal income tax purposes; and

(4) On the effective date of the contract of service, the individual is responsible for filing at the next applicable filing period, both under the contract of service and in fact, a schedule of expenses with the internal revenue service for the type of business the individual is conducting; and

(5) On the effective date of the contract of service, or within a reasonable period after the effective date of the contract, the individual has established an account with the department of revenue, and other state agencies as required by the particular case, for the business the individual is conducting for the payment of all state taxes normally paid by employers and businesses and has registered for and received a unified business identifier number from the state of Washington; and

(6) On the effective date of the contract of service, the individual is maintaining a separate set of books or records that reflect all items of income and expenses of the business which the individual is conducting.

¶23 Again, under this test, a contractor for labor who fulfills all six requirements does not become a "worker." But an independent contractor who does not satisfy any one of these factors is a "worker," and the payment he or she receives in remuneration for services is the "wages."

APPLYING "INDEPENDENT CONTRACTOR" TESTS TO MALANG

¶24 L&I's interpretation of Malang's "wages" as her net business income depends on its assumption that as a sole proprietor, she is both "employer" and "employee." But at no point below or in this court has L&I applied the statutory definitions of "employer" and "worker" to the relationship between Malang and Crescent. Instead, L&I assumed she was her own "employer," apparently on the grounds that she filed federal tax forms as a sole proprietorship and carried elective industrial insurance coverage. But those facts are largely irrelevant to the IIA's standards for determining whether she should be considered an "employer" or a "worker."[7]

¶25 Accordingly, the BIIA's conclusion that Malang is her own employer and its calculation of her wages as her net income from self-employment is erroneous. The BIIA should have applied the statutory definitions of "employer" and "worker" to determine whether the essence of her contract with Crescent was her personal labor. Further, the BIIA should have considered the elements of RCW 51.08.195 to determine whether her services to Crescent constitute employment. Because the BIIA did not consider these statutory definitions, it failed to "reasonably and

---

[7] L&I's summary conclusion that Malang is her own "employer" under the IIA is particularly problematic in light of case law establishing that a real estate broker can be an "employer" of real estate agents, even when the agents work as independent contractors. *See generally Peter M. Black Real Estate Co.*, 70 Wn. App. 482. Observing that "[t]he sale of real estate is a highly regulated profession," the court noted that real estate agents' primary duty is to obtain listings and sell properties, a duty they are statutorily prohibited from delegating to another. *Peter M. Black Real Estate Co.*, 70 Wn. App. at 487, 489-90. Considering the realities of real estate agents' employment, the court concluded that the essence of their contracts was personal labor. *Peter M. Black Real Estate Co.*, 70 Wn. App. at 490-91. Accordingly, the real estate agents were "workers" within the meaning of RCW 51.08.180(1) and the broker was liable for the industrial insurance premiums. *Peter M. Black Real Estate Co.*, 70 Wn. App. at 488, 491. If a real estate broker like Crescent can be an "employer" under the IIA for purposes of establishing liability for premiums, it would be inconsistent to deny that the broker is also an "employer" for purposes of computing "wages." Thus, L&I should have known that it needed to inquire more specifically into the details of Malang's working relationship with Crescent before deeming her her own "employer."

fairly" determine her wages as the IIA requires. RCW 51.08.178(1), (4).

¶26 L&I's argument that calculating Malang's wages based on her total commissions does not accurately reflect her lost earning capacity is unavailing in light of the IIA's plain language. L&I correctly points out that the purpose of time-loss compensation is to reimburse workers for their lost earning capacity. *Cockle*, 142 Wn.2d at 811; *Double D Hop Ranch v. Sanchez*, 133 Wn.2d 793, 798, 947 P.2d 727, 952 P.2d 590 (1997). But even if L&I is correct in assuming that her net earnings are a better estimate of her lost earning capacity than her total commissions, the statutory language prevails over general policy considerations. *See Wilson v. Boots*, 57 Wn. App. 734, 738, 790 P.2d 192 (1990). Here, the IIA plainly provides that the award must be based on the amount of remuneration the employer paid. RCW 51.08.178(1). Calculating her lost earning capacity is constrained by the terms the legislature used, and L&I's contrary interpretation fails.

¶27 The superior court correctly reversed the BIIA's decision that Malang's net income constituted her wages. But in reversing the BIIA, the superior court erroneously concluded that her wages consisted of her total commissions. This conclusion is unfounded because the administrative record is insufficient to determine whether Malang or Crescent is her employer under the IIA. Her contract with Crescent and her testimony about their agreement only addressed how commissions were split, not the nature of her work. Absent such evidence, it is impossible to conclude whether the essence of the contract is her personal labor or whether her sole proprietorship meets the requirements of RCW 51.08.195. On this record, the superior court could not reasonably apply RCW 51.08.070, .180(1), and .195 because the evidence is inadequate to identify her employer. Thus, the superior court erred in directing the BIIA to calculate her wages based on her total commissions.

¶28 Accordingly, we affirm the reversal of the BIIA's order and decision on alternative grounds and remand the

cause to L&I for further proceedings. *Nast v. Michels*, 107 Wn.2d 300, 308, 730 P.2d 54 (1986) (appellate court may affirm the trial court on any correct basis). We vacate the superior court's orders directing the BIIA to calculate Malang's wages from her gross commissions and to pay interest under RCW 51.52.135[8] and WAC 263-12-160.[9] To correctly calculate her time-loss compensation award, L&I must apply the statutory provisions to determine whether she or Crescent is the "employer" that gave consideration for her services.

## ATTORNEY FEES

¶29 The superior court awarded Malang attorney fees under RCW 51.52.130. She also requests and we award attorney fees on appeal under that section, which provides in pertinent part:

> If, on appeal to the superior or appellate court from the decision and order of the board, said decision and order is reversed or modified and additional relief is granted to a worker or beneficiary . . . a reasonable fee for the services of the worker's or beneficiary's attorney shall be fixed by the court.

RCW 51.52.130.

¶30 We affirm the superior court in part but, on alternate grounds, reverse in part, and remand to L&I for further proceedings.

QUINN-BRINTNALL and VAN DEREN, JJ., concur.

---

[8] Under this section, a worker who prevails in appealing a temporary total disability award is entitled to 12 percent interest on the unpaid portion of the award.

[9] Under this section, the BIIA retains jurisdiction of cases on appeal for purposes of ordering interest payments.