253 P.3d 430 (2011)
161 Wash.App. 286
In the Matter of James B. HILL, Appellant,
v.
DEPARTMENT OF LABOR AND INDUSTRIES of the State of Washington, Respondent.
No. 40394-3-II.
Court of Appeals of Washington, Division 2.
April 13, 2011.
*432 Carroll Guy Rusk Jr., Attorney at Law, Tacoma, WA, Appellant.
Michael Walter Rothman, Office of Attorney General, Olympia, WA, for Respondent.
VAN DEREN, J.
¶ 1 James Hill, a former inmate in Washington's Department of Corrections (DOC), appeals from the trial court's denial of his summary judgment motion and its order granting summary judgment to the Department of Labor and Industries (L & I). He contends that L & I improperly calculated the wage basis for his time-loss compensation payments under former RCW 51.08.178(1) (1988) because it should have calculated his wages under former RCW 51.08.178(4). We affirm.

FACTS
¶ 2 Hill, as a DOC inmate, performed work in a Class II inmate work program as defined by RCW 72.09.100.[1] DOC paid Hill $0.85 per hour for work he was performing for correctional industries. On December 10, 2002, while on the job painting, Hill stepped down from a ladder, tripped, and injured both knees.
¶ 3 After Hill's release from incarceration, L & I issued an order allowing time-loss compensation benefits to Hill based on its determination that, at the time of his injury, he worked 7.5 hours per day, 6 days per week, and earned $0.85 per hour. L & I's January 3, 2007, order also determined that he was single with three dependents.[2]
¶ 4 Hill timely appealed the January 3 order to the Board of Industrial Insurance Appeals (Board). In response to Hill's interrogatories, DOC repeatedly stated that Hill was not a DOC employee and, by law, it does not pay Class II inmate workers "wages" but, instead, it pays them a "gratuity." Clerk's Papers (CP) at 159. DOC also indicated that it does not report gratuity payments to the Internal Revenue Service for inmate workers such as Hill.[3] Hill moved for summary judgment before an industrial appeals judge (IAJ). L & I filed a cross motion for summary judgment and DOC filed a supporting brief consistent with L & I's position. The IAJ entered a proposed decision and order granting L & I's summary judgment motion and affirming all orders on appeal. Hill unsuccessfully petitioned the Board for review of the IAJ's proposed decision and order, which the Board adopted as its own.
¶ 5 Hill appealed the Board's order to the trial court and both parties moved for summary *433 judgment. The trial court denied Hill's motion, granted L & I's motion, and affirmed the Board's decision. Hill appeals.

ANALYSIS

TIME-LOSS COMPENSATION PAYMENTS TO FORMER DOC INMATES

A. Standard of Review
¶ 6 First, we clarify the standard of review for appeals from Board decisions. Under RCW 51.52.115, the superior court reviews the Board's determinations de novo.[4] As our Supreme Court observed, the superior court applies RCW 51.52.115's standards:
The Board's decision is prima facie correct under RCW 51.52.115, and a party attacking the decision must support its challenge by a preponderance of the evidence. On review, the superior court may substitute its own findings and decision for the Board's only if it finds "from a fair preponderance of credible evidence, that the Board's findings and decision are incorrect."
Ruse v. Dep't of Labor & Indus., 138 Wash.2d 1, 5, 977 P.2d 570 (1999) (citation omitted) (internal quotation marks omitted) (quoting McClelland v. ITT Rayonier, Inc., 65 Wash.App. 386, 390, 828 P.2d 1138 (1992)).
¶ 7 RCW 51.52.140 further provides in pertinent part that "the practice in civil cases shall apply to appeals prescribed in this chapter. Appeal shall lie from the judgment of the superior court as in other civil cases." (Emphasis added.) Thus, as Division One of this court observed, "This statutory review scheme results in a different role for the Court of Appeals than is typical for appeals of administrative decisions pursuant to, for example, the Administrative Procedure Act, where we sit in the same position as the superior court."[5]Rogers v. Dep't of Labor & Indus., 151 Wash.App. 174, 180, 210 P.3d 355 (footnote omitted), review denied, 167 Wash.2d 1015, 220 P.3d 209 (2009). Normally, our "`review is limited to examination of the record to see whether substantial evidence supports the findings made after the superior court's de novo review, and whether the court's conclusions of law flow from the findings.'" Ruse, 138 Wash.2d at 5-6, 977 P.2d 570 (quoting Young v. Dep't of Labor & Indus., 81 Wash.App. 123, 128, 913 P.2d 402 (1996)); accord Rogers, 151 Wash.App. at 180, 210 P.3d 355. Here, where summary judgment was appropriate at the trial court because Hill concedes that "no material facts are in dispute" and the dispositive issue is one of statutory interpretation, a question of law, we review the trial court's ruling de novo. Br. of Appellant at 6; Dep't of Labor & Indus. v. Granger, 159 Wash.2d 752, 757, 153 P.3d 839 (2007); Madera v. J.R. Simplot Co., 104 Wash.App. 93, 96, 15 P.3d 649 (2001); see also RCW 51.52.140; Malang v. Dep't of Labor & Indus., 139 Wash.App. 677, 683-84, 162 P.3d 450 (2007) (reviewing de novo appeal from superior court's grant of summary judgment affirming Board's decision).

B. Applicability of Former RCW 51.08.178(1)
¶ 8 Hill argues that the trial court erred in granting L & I's summary judgment motion because his $0.85 per hour pay at the time of his injury was a gratuity, not wages, under former RCW 51.08.178(1). L & I responds that Hill's pay constituted wages under the statute because it was consideration received in exchange for the work he performed while incarcerated.
*434 ¶ 9 Our fundamental objective in statutory interpretation is to give effect to the legislature's intent. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002). If a statute's meaning is plain on its face, then we give effect to that plain meaning as an expression of legislative intent. State ex rel. Citizens Against Tolls (CAT) v. Murphy, 151 Wash.2d 226, 242, 88 P.3d 375 (2004). We discern plain meaning not only from the provision in question but also from closely related statutes and the underlying legislative purposes. Murphy, 151 Wash.2d at 242, 88 P.3d 375. If a statute is susceptible to more than one reasonable interpretation after this inquiry, then the statute is ambiguous and we may resort to additional canons of statutory construction or legislative history. Campbell & Gwinn, 146 Wash.2d at 12, 43 P.3d 4.
¶ 10 We give effect to all statutory language, considering statutory provisions in relation to each other and harmonizing them to ensure proper construction. King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 142 Wash.2d 543, 560, 14 P.3d 133 (2000). We avoid construing a statute in a manner that results in "unlikely, absurd, or strained consequences." Glaubach v. Regence BlueShield, 149 Wash.2d 827, 833, 74 P.3d 115 (2003).
¶ 11 We give substantial weight to an agency's interpretation of the law within its expertise, such as regulations the agency administers. Silverstreak, Inc. v. Dep't of Labor & Indus., 159 Wash.2d 868, 885, 154 P.3d 891 (2007); Granger, 159 Wash.2d at 764, 153 P.3d 839. But an agency's interpretation does not bind us, and "deference to an agency is inappropriate where the agency's interpretation conflicts with a statutory mandate." Granger, 159 Wash.2d at 764, 153 P.3d 839. "`[R]ules that are inconsistent with the statutes they implement are invalid.'" Granger, 159 Wash.2d at 764, 153 P.3d 839 (quoting Bostain v. Food Express, Inc., 159 Wash.2d 700, 715, 153 P.3d 846 (2007)).
¶ 12 Title 51 RCW is a "self-contained system" governing procedures and remedies for injured workers. Brand v. Dep't of Labor & Indus., 139 Wash.2d 659, 668, 989 P.2d 1111 (1999). RCW 72.60.102 provides that Title 51 RCW applies to inmates in certain work programs, including the Class II program in which Hill participated. Former RCW 51.08.178(1) specifically governed the bases of time-loss compensation payments to injured workers.[6] It provided:
For the purposes of this title, the monthly wages the worker was receiving from all employment at the time of injury shall be the basis upon which compensation is computed unless otherwise provided specifically in the statute concerned. In cases where the worker's wages are not fixed by the month, they shall be determined by multiplying the daily wage the worker was receiving at the time of the injury:
[By a calculation based on the number of days per week the worker was employed]
The term "wages" shall include the reasonable value of board, housing, fuel, or other consideration of like nature received from the employer as part of the contract of hire, but shall not include overtime pay except in cases under subsection (2) of this section. However, tips shall also be considered wages only to the extent such tips are reported to the employer for federal income tax purposes. The daily wage shall be the hourly wage multiplied by the number of hours the worker is normally employed. The number of hours the worker is normally employed shall be determined by the department in a fair and reasonable manner, which may include averaging the number of hours worked per day.
¶ 13 Under its plain language, former RCW 51.08.178(1) was the default provision for time-loss compensation at the time L & I calculated Hill's wages and it must be used unless L & I establishes that it does not apply. Dep't of Labor & Indus. v. Avundes, 140 Wash.2d 282, 290, 996 P.2d 593 (2000). Hill contends that the legislature characterizes *435 payment for inmate participation in DOC work programs as a gratuity, which includes tips in its ordinary meaning. He reasons that, because DOC does not report these gratuity payments to the Internal Revenue Service as wages, they are not wages for purposes of L & I's computation of the wages used to determine time-loss compensation and former RCW 51.08.178(1) does not apply.
¶ 14 Hill correctly notes the legislature's characterization of payments to inmates in the Class II work program. RCW 72.09.100 establishes five classes of inmate work programs. Inmates in Class I programs are specifically paid "a wage comparable to the wage paid for work of a similar nature in the locality in which the industry is located." RCW 72.09.100(1)(e) (emphasis added). In contrast, inmate workers in Class II programs "shall be paid for their work on a gratuity scale which shall not exceed the wage paid for work of a similar nature in the locality in which the industry is located." RCW 72.09.100(2)(e) (emphasis added). Workers in Class III and IV programs also are "paid for their work in accordance with an inmate gratuity scale" or "receive a gratuity" for their work. RCW 72.09.100(3)(e), (4)(e). Other provisions of chapter 72.09 RCW also expressly distinguish between inmate wages and gratuities. See e.g., RCW 72.09.470 (Inmate contributions to the cost of privileges "may be in the form of . . . deductions from an inmate's gross wages or gratuities."); former RCW 72.09.111(1) (2004) (distinguishing between "wages, gratuities, or benefits" received by inmates working in work programs).
¶ 15 But labeling Hill's work program compensation as a gratuity under chapter 72.09 RCW does not determine its categorization under former RCW 51.08.178. See Gallo v. Dep't of Labor & Indus., 155 Wash.2d 470, 487-488, 120 P.3d 564 (2005) (clarifying that labels are not determinative of whether employer payments are wages under former RCW 51.08.178(1)). Instead, we must determine whether the nature of DOC's payments to Hill fall within the meaning of wages under former RCW 51.08.178(1).
¶ 16 When possible, courts define statutory terms by their ordinary meaning. See Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 807-08, 16 P.3d 583 (2001); In re Testamentary Trusts for Barovic v. Pemberton, 128 Wash.App. 196, 200, 114 P.3d 1230 (2005). The ordinary meaning of "wage[s]" is "monetary remuneration by an employer esp. for labor or services." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2568 (2002); BLACK'S LAW DICTIONARY 1716 (9th ed.2009); see also Doty v. Town of South Prairie, 155 Wash.2d 527, 542, 120 P.3d 941 (2005) ("`[W]ages,' simply stated, refer to the monetary remuneration for services performed."); Malang, 139 Wash.App. at 686-87, 162 P.3d 450 (stating the same); Rose v. Dep't of Labor & Indus., 57 Wash.App. 751, 758, 790 P.2d 201 (1990) ("We construe the term `wage,' therefore, to include any and all forms of consideration received by the employee from the employer in exchange for work performed.").
¶ 17 In Rose, we interpreted the language, "other consideration of like nature received from the employer" in former RCW 51.08.178, to mean that "wages" consist of "any and all forms of consideration" paid by the employer. 57 Wash.App. at 758, 790 P.2d 201 (emphasis added). Our Supreme Court subsequently rejected this inclusive interpretation and held that the phrase "`other consideration of like nature'" included as "wages" only "`readily identifiable and reasonably calculable in-kind components of a worker's lost earning capacity at the time of injury that are critical to protecting workers' basic health and survival.'" Gallo, 155 Wash.2d at 482, 120 P.3d 564 (quoting Cockle, 142 Wash.2d at 822, 16 P.3d 583). But the Cockle court expressly noted that it was addressing what types of "in-kind" benefits like board, housing, and fuel constituted wages and was not addressing "monetary forms of consideration such as an hourly or daily pay rate." 142 Wash.2d at 807 n. 2, 16 P.3d 583. Thus, despite our Supreme Court's limitation on in-kind benefits that constitute wages, our holding in Rose that wages consist of some form of consideration received in exchange for performed work remains an accurate statement of law and Cockle does *436 not abrogate Rose in that respect.[7]
¶ 18 Similarly, L & I's regulations define "wages" as:
(1) The gross cash wages paid by the employer for services performed. "Cash wages" means payment in cash, by check, by electronic transfer or by other means made directly to the worker before any mandatory deductions required by state or federal law. Tips are also considered wages but only to the extent they are reported to the employer for federal income tax purposes.
(2) Bonuses paid by the employer of record as part of the employment contract in the twelve months immediately preceding the injury or date of disease manifestation.
(3) The reasonable value of board, housing, fuel and other consideration of like nature received from the employer at the time of injury or on the date of disease manifestation that are part of the contract of hire.
WAC 296-14-522. These "wage" definitions are consistent with former RCW 51.08.178(1), which described "`wages'" as including "the reasonable value of board, housing, fuel, or other consideration of like nature received from the employer as part of the contract of hire." (Emphasis added).
¶ 19 But Hill, citing chapter 49.46 RCW, the Washington minimum wage act, argues that his wage "cannot be reasonably and fairly determined"[8] under former RCW 51.08.178(1) using the $0.85 per hour pay rate, because this results in time-loss payments insufficient to meet his basic needs. The legislature, however, has specifically exempted inmates from protection as "`[e]mployee[s]'" under the Washington minimum wage act since at least 1975. See RCW 49.46.010(5)(k); former RCW 49.46.010(5)(j) (1975). We presume that the legislature is aware of this exemption and its possible ramifications on inmate time-loss compensation claims but it has not seen fit to address the issue or amend either statute to include inmates under the minimum wage act. See Sandahl v. Dep't of Labor & Indus., 170 Wash. 380, 383, 16 P.2d 623 (1932) (stating that we presume the legislature is aware of other statutory provisions when enacting and amending statutes). Thus, we must presume that the legislature has determined that time-loss compensation payments based on inmate wages paid by DOC are reasonable and fair.
¶ 20 Here, RCW 72.09.100(2)(e) required that DOC pay Hill for his work. Thus, despite the legislature labeling his payment as a gratuity, his pay was not an optional gift or donation within the ordinary meaning of gratuity, as Hill contends. Further, RCW 72.09.100(2)(e) specifies that inmate workers voluntarily participate in Class II work programs. Simply put, if Hill chose to work in a Class II program, state law required that he receive monetary remuneration for his work. Hill's pay of $0.85 per hour was consideration for his work program participation and, thus, wages under former RCW 51.08.178(1).
¶ 21 Hill's argument, that L & I should have used former RCW 51.08.178(4) to calculate his wages and not the $0.85 cents per hour that DOC paid him as his hourly wage under former RCW 51.08.178(1), fails.
¶ 22 We affirm the trial court's order granting summary judgment to L & I.
We concur: QUINN-BRINTNALL, J., and WORSWICK, A.C.J.
NOTES
[1] RCW 72.09.100 defines five classes of inmate work programs. Class II work programs are defined as "state-owned and operated enterprises designed primarily to reduce the costs for goods and services for tax-supported agencies and for nonprofit organizations." RCW 72.09.100(2)(a).
[2] L & I issued four additional orders that paid Hill specific amounts of time-loss compensation on specific dates. The other four time-loss payment orders that Hill appealed are dated December 1, 2006; December 29, 2006; January 12, 2007; and January 26, 2007. These four orders were for time-loss periods from November 14, 2006, through November 27, 2006, and for December 12, 2006, through January 22, 2007.
[3] Specifically, Hill's fourth interrogatory asked, "For the wages paid to . . . Hill by [DOC], did [DOC] report those wages to the federal Internal Revenue Service?" CP at 159. DOC answered in pertinent part, "No. By law, DOC does not pay inmate workers `wages' for Class II, III, and IV work, but a `gratuity' and inmate workers are not employees of DOC, hence such reporting or taking such deductions is not legally authorized." CP at 159.
[4] RCW 51.52.115 provides in pertinent part:

The hearing in the superior court shall be de novo, but the court shall not receive evidence or testimony other than, or in addition to, that offered before the board or included in the record filed by the board in the superior court as provided in RCW 51.52.110. . . . In all court proceedings under or pursuant to this title the findings and decision of the board shall be prima facie correct and the burden of proof shall be upon the party attacking the same. If the court shall determine that the board has acted within its power and has correctly construed the law and found the facts, the decision of the board shall be confirmed; otherwise, it shall be reversed or modified.
[5] We further note that, under RCW 34.05.030(2)(a), the judicial review provisions of the Administrative Procedure Act, chapter 34.05 RCW, do not apply "[t]o adjudicative proceedings of the board of industrial insurance appeals except as provided in RCW 7.68.110 and 51.48.131."
[6] The legislature amended RCW 51.08.178 in 2007. LAWS OF 2007, ch. 297, § 1. These amendments do not affect our analysis.
[7] In his brief, Hill appears to argue that, if L & I properly calculated his wages under former RCW 51.08.178(1), then it should have included the value of his institutional food, housing, and health benefits in the calculation. At oral argument, however, Hill conceded that he is not requesting this relief. Moreover, Hill's food, housing, and health benefits were not provided as consideration for work performed but as a result of his incarceration. See Rose, 57 Wash. App. at 759-60, 790 P.2d 201.
[8] Former RCW 51.08.178(4) provided: "In cases where a wage has not been fixed or cannot be reasonably and fairly determined, the monthly wage shall be computed on the basis of the usual wage paid other employees engaged in like or similar occupations where the wages are fixed."